# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00549-CV

**Gary Henry and Sheree Henry; Brenda Adams-Degraffenreid; Sean Adams and Meshanna Adams; Robert Allen; W. Marie Allen; Betty Andrews; Courtney Armstrong and Cheri Armstrong; Yaser Ayyoub and Sanna Ayyoub; Elizabeth Baker; Eric Bearden; et al., Appellants**

**v.**

**Kaufman County Development District No. 1, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
## NO. GV300279, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## O P I N I O N

This case involves a dispute between Gary and Sheree Henry and other homeowners (collectively the Homeowners)[1] and the Kaufman County Development District No. 1 (the District) over the validity of special assessments levied by the District against the Homeowners. The District was created under the County Development District Act (the Act) to "further[] the public purpose of developing and diversifying the economy of this state by providing incentives for the location and development of projects in certain counties to attract visitors and tourists." *See* Tex. Loc. Gov't Code Ann. §§ 383.001, .002, .021 (West 1999). The District levied the assessments to pay for infrastructure improvements of a residential subdivision in the District. The Homeowners appeal

---

[1] The appendix to this opinion lists the appellants individually.

the district court's summary judgment in favor of the District, ruling that its order levying the assessments was proper and authorized by statute. Because we hold that the District did not have the authority to levy special assessments, we reverse the district court's summary judgment and remand this cause to the district court for further proceedings not inconsistent with this opinion.

**BACKGROUND**

The Act authorizes the commissioners court of a small or medium-sized county to create a "county development district" to provide incentives for the location and development of projects "to attract visitors and tourists." *See id.* § 383.002. In 1996, a landowner in Kaufman County filed a petition with the commissioners court seeking the creation of such a district. *See id.* §§ 383.021, .022 (West 1999). The commissioners court accepted the petition and created the District, calling for an election to confirm the creation and approve a local sales and use tax to support it. *See id.* §§ 383.030, .101 (West 1999). The District's creation and the sales and use tax were approved by a majority of the voting residents. *See id.* § 383.034 (West 1999).

Included with the landowner's petition was a vaguely described project to be undertaken by the District: "the enhancement of land, building, equipment, facilities and improvements . . . to promote and develop new or expanded business enterprises which will attract visitors to the District and result in employment and economic activity." The estimated cost of the proposed project was $200,000,000, to include the construction of homes, a swim center, parks, lakes, office buildings, schools, a shopping center, water- and sewage-treatment facilities, streets, and a golf course.

2

In January 1999, a petition was submitted to the District by the owners of fifty percent or more of the assessed value of the property of the District, requesting the financing of certain services and improvements, known as the Capital Improvement Project (the Project), whose costs were estimated at $15,000,000. The Project encompassed road improvements, soil and erosion control, and similar infrastructure improvements for a residential subdivision located in the District. The District provided public notice in the *Dallas Morning News* of a public hearing to be held in February 1999 to consider the advisability of the requested improvements and the possibility of financing them with assessments. In July 1999, after public notice and the hearing, the District's board reduced the cost of the Project to $9,000,000 and levied special assessments against certain property in the District. The assessments were levied according to the value of the improved property as determined by the District's board and ranged from $9,977 for a 50-foot wide lot to $17,949 for an 80-foot wide lot. The order allowed the assessments to be paid immediately or in annual installments until the year 2025. At that time, the assessed property contained no street improvements or houses, but it had been platted into lots. The District filed the amount of the assessments for every subject parcel in the Kaufman County deed records. The lots were subsequently sold to the Homeowners, who now contest the District's authority to levy the assessments.

After the assessment order was entered, the District entered into a lease-purchase agreement with the KCDD1-Fel Corporation, which agreed to lease the Project to the District and advance the funds necessary to finance it. The District in exchange pledged the assessments it would collect from the Homeowners as lease payments to the corporation.

The Homeowners filed suit against the District in Kaufman County, seeking an injunction against the District's attempts to collect the assessments and asserting various claims, including fraud, violation of their constitutional property rights, and intentional infliction of emotional distress. Three days later, the District filed a suit for declaratory and injunctive relief against the Homeowners in Travis County under chapter 1205 of the government code, seeking a declaration that its assessments were valid and enforceable pursuant to statutory authority. *See* Tex. Gov't Code Ann. § 1205.021 (West 2000) (authorizing district to bring declaratory-judgment action to determine validity of public security and related assessment). The Travis County court abated the action in Kaufman County and then consolidated that action with the District's declaratory-judgment suit.

The District moved for summary judgment, asserting that its assessments were valid because (1) the Act incorporated by reference the power to levy assessments contained in chapter 375 of the local government code, which deals with municipal management districts and specifically authorizes those districts to levy special assessments; (2) the Homeowners failed to exhaust administrative remedies before challenging the validity of the assessments; and (3) Senate Bill 1444, passed in 2001, retroactively validated the assessments. The Homeowners filed a cross-motion for summary judgment, asserting that the District lacked statutory authority to levy the special assessments, that the Homeowners were not required to exhaust administrative remedies, and that Senate Bill 1444 did not validate the assessments. The district court granted the District's motion and denied the Homeowners' motion, declaring the assessments to be valid, binding, enforceable and pursuant to proper statutory authority.

4

In five issues, the Homeowners assert on appeal that (1) the District failed to prove as a matter of law that it had the statutory authority to levy special assessments; (2) the District failed to prove as a matter of law that the assessments funding the infrastructure of a residential subdivision were for a proper and authorized project that would attract tourists; (3) there is a fact issue as to whether the District complied with mandatory statutory procedures in levying the assessments; (4) the Homeowners were not required to exhaust administrative remedies; and (5) the assessments were not validated by Senate Bill 1444, as claimed by the District.

## DISCUSSION

### *Standard of review*

The standard for reviewing a motion for summary judgment is well established: (i) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law; (ii) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (iii) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645-46 (Tex. 2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *Basic Capital Mgmt. v. Dow Jones & Co.*, 96 S.W.3d 475, 480 (Tex. App.—Austin 2002, no pet.). The propriety of summary judgment is a question of law; therefore, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). A court of appeals should consider all grounds presented by the movant for summary judgment that the trial

5

court ruled on but may, in the interest of judicial economy, also consider other presented grounds on which the trial court did not rule. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996).

### *Exhaustion of administrative remedies*

The District asserts that the Homeowners may not challenge the validity of the assessments because they failed to exhaust the administrative remedies of section 375.123 of the local government code, which provides the procedure by which a property owner may appeal a special assessment levied by a municipal management district. *See* Tex. Loc. Gov't Code Ann. §§ 375.123, .124 (West 1999) (property owner must file notice of appeal with district's board within thirty days after adoption of assessment and then may appeal board's decision to court). Although the administrative remedies in section 375.123 on their face apply only to municipal management districts, not county development districts, the District bases its argument on the premise that the Act incorporates by reference the assessment power of municipal management districts and therefore, by implication, incorporates the procedures for challenging an assessment. *See id.* §§ 375.111, .123, .124, 383.061 (West 1999). The Homeowners counter that they were not required to exhaust administrative remedies prior to bringing this suit because the Act did not incorporate the assessment power, *see discussion infra*, and even if the Act did incorporate the power, it did not also incorporate the procedure for challenging an assessment. *See id.* More importantly, assert the Homeowners, it is well settled that a party need not exhaust administrative remedies when the issue before the court is a pure question of law. *See Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex. 1986),

6

*rev'd on other grounds*, 856 S.W.2d 417 (Tex. 1993); *City of Austin v. Pendergrass*, 18 S.W.3d 261, 264-65 (Tex. App.—Austin 2000, no pet.).

The sole issue presented in this declaratory-judgment action is whether the assessments were validly levied pursuant to statutory authority.[2] This is purely a question of law, and the answer is dispositive of that issue. Although the Homeowners assert two other reasons that involve mixed questions of law and fact for why the assessments are invalid—that they would be used for an unlawful purpose and that the District failed to comply with mandatory statutory procedures in ordering their levy—the Homeowners pled them in the alternative, and we need not reach them if we hold that the assessments are invalid as a matter of law. Furthermore, we agree with the Homeowners that although the Act incorporates the "powers" of a municipal management district, it does not also incorporate the "procedures" or "remedies" of chapter 375. Section 383.061 of the Act is clear: a county development district "has the *powers* of a municipal management district." *See id.* § 383.061(b) (emphasis added). The Act does not incorporate "the procedures in chapter 375 relating to the challenge of an assessment" or anything similar. We will not read into the Act a provision that is not there. *See In re Bell*, 91 S.W.3d 784, 790 (Tex. 2002) (Courts should not insert words into a statute except to give effect to clear legislative intent.). The Homeowners

---

[2] Although the Homeowners' petition, originally filed in Kaufman County and consolidated into the District's declaratory-judgment action in Travis County, alleged several causes of action besides those involving pure questions of law, including fraud and intentional infliction of emotional distress, that cause was severed from the present cause after the Travis County district court granted the District's summary-judgment motion on the issue of the assessments' validity. Thus, the sole issue on appeal concerns the validity of the assessments, not any of the Homeowners' factually based claims.

7

were not required to exhaust administrative remedies prior to seeking a declaration that the assessments were invalid for lack of statutory authority. We sustain the Homeowners' fourth issue.

*Special assessments*

The Homeowners assert that the District did not have statutory authority to levy the assessments. They argue first that the Act, which authorizes and governs county development districts, does not itself provide any authority to levy assessments. Therefore, the only possible authority for the assessments must derive from section 383.061(b) of the Act, which provides that a county development district "has the powers of a municipal management district created under Chapter 375 [of the local government code] to the extent not inconsistent with this chapter." Tex. Loc. Gov't Code Ann. § 383.061(b). Section 375.111 provides that a municipal management district "may levy and collect special assessments." *Id.* § 375.111. The Homeowners insist that this incorporation by reference of the powers of chapter 375 does not confer on a county development district the power to levy special assessments for two reasons: (1) the levying of a special assessment is a function of the taxing power of a governmental unit, and such power must be "plainly and unmistakably conferred," *see State v. Houston & Tex. Cent. Ry.*, 209 S.W. 820, 822 (Tex. Civ. App.—Galveston 1919, no writ) (quoting *Brown v. Graham*, 58 Tex. 254, 256 (1883)), and (2) the power to levy special assessments is inconsistent with the Act.

The Homeowners principally rely on an attorney general opinion holding that the Act does not authorize a county development district to levy an ad valorem tax. *See* Op. Tex. Att'y Gen. No. JC-0291 (2000) (hereinafter cited as AG Opinion). Although attorney general opinions are not binding on this Court, we consider them highly persuasive authority and accordingly give them due

8

consideration. *Hardin County Cmty. Supervision & Corr. Dep't v. Sullivan*, 106 S.W.3d 186, 189-90 (Tex. App.—Austin 2003, pet. denied); *Arlington Indep. Sch. Dist. v. Texas Attorney Gen.*, 37 S.W.3d 152, 159 (Tex. App.—Austin 2001, no pet.).

The AG Opinion begins with a review of the Act. The statement of legislative intent provides that the Act "furthers the public purpose of developing and diversifying the economy of this state by providing incentives for the location and development of projects in certain counties to attract visitors and tourists." *See* Tex. Loc. Gov't Code Ann. § 383.002. The legislative findings include the following: "Small and medium-sized counties in this state . . . are at a disadvantage in competing with counties in other states for the location and development of projects that attract visitors." *See id.* § 383.003 (West 1999).

Section 383.061 of the Act outlines the powers and duties of a county development district. *See id.* § 383.061. The powers include the ability to "acquire and dispose of projects" and "the powers of a municipal management district created under Chapter 375 to the extent not inconsistent with this chapter." *Id.* "Projects," as defined under section 4B(a)(2) of the Development Corporation Act of 1979, broadly include land, buildings, equipment, facilities, and improvements that pertain to a multitude of purposes, including entertainment, tourism, business enterprise, affordable housing, water-supply facilities, and water-conservation programs. *Id.* § 383.004(8); *see* Tex. Rev. Civ. Stat. Ann. art. 5190.6, § 4B(a)(2) (West Supp. 2004). Subchapter E of the Act authorizes a county development district to issue bonds to defray the costs of a project, and Subchapter F expressly authorizes a district to impose a sales and use tax if approved by a majority of voters. *See* Tex. Loc. Gov't Code Ann. §§ 383.081-.084, .101 (West 1999).

9

The inquiry that served as the basis for the AG Opinion was submitted by an official from Kaufman County in the wake of the District's order levying these assessments. While the AG Opinion addressed a county development district's authorization to levy an ad valorem tax, in this dispute the question has been framed in terms of the District's authority to levy a special assessment. But the analysis for both questions is grounded in the legal principle that a political subdivision of a state has no inherent power to levy taxes and that such power must be expressly granted by law. *Ripley v. Trinity River Canal & Conservancy Dist.*, 88 S.W.2d 752, 756 (Tex. Civ. App.—Dallas 1935, writ ref'd). The taxing power may only be exercised by a political subdivision if the power has been expressly conferred by the constitution or legislation. *Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 948 (Tex. 1940). The power to tax must be "plainly and unmistakably conferred." *See Houston & Tex. Cent. Ry.*, 209 S.W. at 822. "The power to levy assessments for the construction of drains can be exercised only when granted in clear and unmistakable terms, and statutes purporting to grant such power must be strictly construed as against those asserting the right to exercise it." *Mann*, 142 S.W.2d at 948 (quoting *Dallas Consol. Elec. St. Ry. Co. v. City of Dallas*, 260 S.W. 1034, 1036 (Tex. Comm'n App. 1924, judgm't adopted).

But, insists the District, the *Mann* line of cases does not apply because a special assessment is simply not a tax. For this proposition it cites *City of Wichita Falls v. Williams*, 26 S.W.2d 910, 911 (Tex. 1930), which noted that "the word 'taxes' . . . refers to ordinary ad valorem taxes only and does not embrace special assessments." *Williams* explained the difference between taxes—"the enforced proportional contribution of persons and property levied by authority of the state for the support of government and for all public needs"—and special assessments—charges

10

imposed "upon the real or supposed benefit resulting from the improvement of the property on which the specific charge is laid." *Id.* at 912 (quoting *Taylor v. Boyd*, 63 Tex. 533, 540-41 (1885)); *see also Harris County v. Boyd*, 7 S.W. 713, 714 (Tex. 1888) ("Taxation is the enforced contribution of persons and property 'levied by the authority of the State for the support of the government and for all public needs.'"). We agree that special assessments, by their very nature, are to be used for a limited, identified purpose rather than serve as general income to the government to be used "for all public needs." Thus, we agree with the District that special assessments are not "taxes" in the strict sense of that word.

However, *Williams* relegated special assessments to the broad category of "taxation" when it said, "[s]pecial assessments, *as distinguished from other kinds of taxation . . . .*" *Williams*, 26 S.W.2d at 911 (emphasis added). That case also recognized that "the authority for making assessments . . . is derivable from and in exercise of the taxing power." *See id.* at 913 (quoting *Roundtree v. City of Galveston*, 42 Tex. 612, 625 (1874)); *see also Boyd*, 7 S.W. at 714 ("assessments . . . are made under the power to tax—are an exercise of that power"). Moreover, *Williams* is inapplicable to this case because it dealt solely with the question of whether certain constitutional provisions relating to taxation carry over to special assessments; the Court was concerned that if "tax" as it appeared in the constitution included special assessments, "then special assessments would be limited in amount by the very terms found in the Constitution, and the improvement of the streets of our cities would be practically at an end." *Williams*, 26 S.W.2d at 913. This case does not turn on the question of whether taxes and special assessments are one and the same but, rather, on whether special assessments are an exercise of the taxing power. As discussed

11

above, we are persuaded by the Homeowners' argument that the levying of an assessment is an exercise of the taxing power. *See Houston & Tex. Cent. Ry.*, 209 S.W. at 822; *Maverick County Water Control & Improvement Dist. No. 1 v. State*, 456 S.W.2d 204, 206 (Tex. App.—San Antonio 1970, writ ref'd). Therefore, the power to assess must be clearly and unmistakably granted.

Nowhere in the Act is a county development district expressly authorized to levy assessments or ad valorem taxes. The only tax that the Act expressly authorizes a district to levy is a sales and use tax, with limitations that are laid out in great detail. *See* Tex. Loc. Gov't Code Ann. §§ 383.030, .031, .033, .101, .102-.106 (West 1999). As the AG Opinion notes, "[t]he detailed provision in [the Act] for the sales and use tax suggests that the legislature did not intend county development districts to wield any other taxing authority." AG Opinion at 3. The District would derive its authority to levy assessments through section 383.061, which incorporates by reference the "powers" of a municipal management district created under chapter 375. *See* Tex. Loc. Gov't Code Ann. § 383.061. Chapter 375, subchapter E, entitled "Powers and Duties," includes the power to levy ad valorem taxes to pay for roads. *See id.* § 375.091 (West 1999). Subchapter F, entitled "Assessments," adds to those powers:

> *In addition to the powers provided by Subchapter E*, the board of a [municipal management] district may undertake improvement projects and services that confer a special benefit on all or a definable part of the district . . . [and] *may levy and collect special assessments* on property in that area, based on the benefit conferred.

*Id.* § 375.111 (emphasis added).[3]

---

[3] The Homeowners assert that only subchapter E, and not subchapter F, is incorporated because the title of subchapter E is "Powers and Duties," while the title of subchapter F is

12

Despite the Act's language incorporating the "powers" of chapter 375, the AG Opinion concluded that county development districts do not have the authority to levy ad valorem taxes.[4] It noted that courts have insisted that the power to tax be expressly conferred and that the power to levy ad valorem taxes was not expressly conferred upon county development districts. Moreover, the detailed provisions restricting the power to impose sales and use taxes suggest that the legislature did not intend a district to "wield any other taxing authority." *See* AG Opinion at 3. The Homeowners argue that imposing a special assessment is an exercise of the taxing power, that the incorporation by reference of the powers in chapter 375 was not sufficiently express to constitute "clear and unmistakable terms," and that the power to levy must be construed against the District. *See Mann*, 142 S.W.2d at 947-48.

The District rejoins that although the power to tax must be expressly conferred, incorporation by reference is sufficient because "the adoption of an earlier statute by reference makes it as much a part of the later act as though it had been incorporated at full length." *Engel v. Davenport*, 271 U.S. 33, 38 (1926); *see B-R Dredging Co. v. Rodriguez*, 564 S.W.693, 696 (Tex.

"Assessments." We disagree. It is the "powers" of a "municipal management district" created under chapter 375 that are incorporated, not the powers of "subchapter E." Thus, any power relating to a municipal management district appearing anywhere in the chapter could reasonably be incorporated, based solely on the first part of the text of section 383.061, providing that a county development district has the powers of a municipal management district. However, as the text indicates, there are other considerations besides merely the initial text of section 383.061.

[4] County development districts "are separate quasi-governmental authorities, which, much like municipal utility or water conservation districts, are created by election, are governed by a board, and have the ability to issue bonds, but *with authority to levy sales and use taxes instead of ad valorem taxes*." *See* R. Alan Haywood & David Hartman, *Legal Basics for Development Agreements*, 32 Tex. Tech L. Rev. 955, 958 n.23 (2001) (emphasis added).

13

1978).  The District further contends that if the power to assess were not incorporated, the reference to chapter 375 would have little or no meaning, and statutory language is presumed to have some meaning and should be given any reasonable interpretation that will do so.  *See Harris County Dist. Attorney's Office v. J.T.S.*, 807 S.W.2d 572, 574 (Tex. 1991).

We conclude that the reference has meaning without incorporating the power to assess because section 375.092 lists several other "specific powers" of a municipal management district for which there is no comparable provision in the Act.  *See* Tex. Loc. Gov't Code Ann. § 375.092 (West 1999).  These specific powers include perpetual succession, acquiring and disposing of real and personal property, entering into contracts with the United States and its subdivisions, and procuring insurance as deemed advisable by the district's board.  *See id.*

Secondly, the Attorney General cited by analogy certain sections of chapter 376 (governing particular municipal management districts) in which the legislature has vested specific municipal management districts with the powers of a district created under chapter 375 but also with the express power to levy ad valorem taxes in accordance with chapter 375, concluding that "[i]f the legislature had intended to vest county development districts with the [same] authority . . . it would have done so expressly, as it did in [those sections]."  *See* AG Opinion at 4.  The Homeowners cite these same sections of the local government code, including section 376.012, which provides: "(a) The [Houston Downtown Management D]istrict has . . . (2) the rights, powers, privileges, authority, and functions of a district created under Chapter 375 . . . [and] (5) the power to impose ad valorem taxes, assessments, or impact fees in accordance with Chapter 375 to provide improvements and services for a project or activity the district is authorized to acquire, construct, improve, or provide."

14

*See* Tex. Loc. Gov't Code Ann. § 376.012 (West 1999); *see also id.* §§ 376.052, .090, .122, .221, (West 1999).  The Homeowners note that if the sections' broad incorporation of the powers of chapter 375 included the power to assess, it would have been unnecessary to state these powers again, individually.  If the incorporation language referencing chapter 376 included the powers to levy assessments or ad valorem taxes, the subsection explicitly allowing districts to exercise those powers would be redundant and mere surplusage.  A statutory construction that creates a redundancy is to be avoided.  *See Larry Koch, Inc. v. Tex. Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 837-38 (Tex. App.—Austin 2001, pet. denied).  Section 376.012 and the other sections referenced above illustrate that the legislature specifically and expressly grants the power of taxation when it intends to do so.

The District, on the other hand, urges that when the legislature uses a general incorporation of powers but intends to *exclude* taxing authority, it specifically does so, citing several bills with language such as: "The [Salt Fork Water Quality D]istrict has all of the rights, privileges, powers, and duties provided by the general laws of this state . . . applicable to special utility districts . . . *except that the district may not levy or collect taxes*."  *See* Act of Apr. 22, 1999, 76th Leg., R.S., ch. 1139, § 6(b), 1999 Tex. Gen. Laws 4033, 4034 (emphasis added); *see also* Act of May 29, 1997, 75th Leg., R.S., ch. 1066, § 5, 1997 Tex. Gen. Laws 4059, 4059 (Guadalupe County Groundwater Conservation District has "all of the rights, powers, privileges, authority, functions, and duties provided by the general laws of this state, including Chapters 36 and 49, Water Code . . . [but] may not impose a tax or fee"); Act of May 19, 1997, 75th Leg., R.S., ch. 589, § 6, 1997 Tex. Gen. Laws 2054, 2059 (Chambers County-Cedar Bayou Navigation District has all the powers of districts

15

created under chapters 60, 62, and 63 of the water code but does not have the power to levy ad valorem taxes unless they have been approved by a majority of voters.). Because we must narrowly construe the grant of taxing power, we resolve this dispute in favor of the Homeowners' position. Moreover, we hold that the power to make special assessments is "inconsistent with" the Act, as discussed below.

The Homeowners note that if the incorporation by reference in section 383.061 broadly covered every conceivable power appearing in chapter 375, it would also incorporate the power to issue bonds appearing in section 375.201. *See* Tex. Loc. Gov't Code Ann. § 375.201 (West 1999). However, the Act expressly grants a county development district the authority to issue bonds, but specifically incorporates sections 375.201 through 375.208, concerning the details of bond requirements, pledges, and refunds. *See id.* §§ 375.201-.208, 383.081 (West 1999). Again, the specific inclusion in the Act of the authority to issue bonds would be redundant if the "powers" incorporated earlier in the chapter already included that power. Such redundancy is an indication that we best fulfill legislative intent by narrowly construing the "powers of a municipal management district" incorporated by reference in section 383.061.

Finally, section 383.061(b) confers on county development districts "the powers of a municipal management district created under Chapter 375 *to the extent not inconsistent with this chapter.*" *See id.* § 383.061(b) (emphasis added). The Homeowners argue that the power to assess is inconsistent with the Act. The purpose of the Act is to "develop[] and diversify[] the economy of this state by providing incentives for the location and development of projects in certain counties *to attract visitors and tourists*" because small and medium-sized counties are "at a disadvantage in

16

competing with counties in other states for the location and development of *projects that attract visitors*." *See id.* § 383.002, .003 (emphasis added).  Clearly, the purpose of a county development district is to undertake projects that will attract tourists and visitors so that the economy will benefit. Projects undertaken to attract tourists and visitors are the type of projects authorized and countenanced by the Act, and the power to undertake such projects is specifically granted to county development districts.  *See id.* § 383.061 ("district may acquire and dispose of projects").  Projects undertaken for other purposes would be, therefore, inconsistent with the chapter. Chapter 375 grants municipal management districts the power to undertake improvement projects and services *that confer a special benefit* on all or part of the district, and secondarily the power to levy assessments *for such projects*.  *See id.* § 375.111.  Because chapter 375 confers the power to assess for projects that are not within the scope of a county development district, that power is inconsistent with the Act.  Furthermore, we agree with the Attorney General's conclusion that the Act's detailed provisions for sales and use taxes reveal a legislative intent that county development districts not "wield any other taxing authority."  *See* AG Opinion at 3.  Inferring by reference a power to tax or levy assessments would interfere with the intentional and detailed taxation scheme set forth in the Act.

Because the power to levy assessments is not unmistakably conferred upon county development districts and because the power to levy assessments for projects that confer a special benefit could be inconsistent with the purposes of the Act, we hold that the District did not have statutory authority to levy the assessments.  We sustain the Homeowners' first issue.[5]

---

[5] Because we conclude that the assessments were not authorized by the Act as a matter of law, we need not reach the Homeowners' second and third issues—whether the assessments were

17

*Senate Bill 1444*

The trial court noted the ground on which it granted summary judgment for the District—that it had statutory authority to levy the assessments under section 383.061—and therefore did not rule on the District's alternate ground—that Senate Bill 1444 retroactively validated the assessments. However, we proceed to a discussion of this issue in the interest of judicial economy. *See Cates*, 927 S.W.2d at 625. One of the District's arguments at district court was that Senate Bill 1444, adopted by the legislature in 2001, retroactively validated the assessments. *See* Act of May 26, 2001, 77th Leg., R.S., ch. 1423, § 42, 2001 Tex. Gen. Laws 5069, 5079 (validating and confirming acts of water districts taken within two years prior to act's effective date of June 17, 2001). The Homeowners retort that the act applies only to "conservation and reclamation districts" and not to county development districts. The District rejoins that the phrase "conservation and reclamation districts" includes county development districts because the act applies to "conservation and reclamation district[s] *created under Section 52, Article III, and Section 59, Article XVI, Texas Constitution*," and that county development districts "serve the purpose of Section 59, Article XVI, and Section 52, Article III, Texas Constitution." *See id.* (emphasis added); Tex. Loc. Gov't Code Ann. § 383.003(c).

The first constitutional provision cited in Senate Bill 1444 is broad and, on its own, could authorize various types of districts:

---

for an authorized purpose and whether the District complied with mandatory procedures in ordering the levy.

> Under legislative provision, any county . . . may issue bonds or otherwise lend its credit . . . and levy and collect taxes to pay the interest thereon . . . for the following purposes[: to improve rivers, creeks, and streams and construct and maintain pools, lakes, and reservoirs for irrigation and navigation purposes and to construct, maintain, and operate roads and turnpikes].

Tex. Const. art. 3, § 52(b). The second provision speaks directly to a particular kind of district but also about the general public interest in conserving and developing the state's natural resources. It declares, "the conservation and development of all of the natural resources of this State . . . [are] public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto" and "[t]here may be created . . . conservation and reclamation districts" to accomplish the purposes of the amendment. *Id.* art. 16, § 59(a), (b). Thus, a "conservation and reclamation district *created* under" these two constitutional provisions must be a conservation and reclamation district that in some way conserves or develops natural resources while also improving or constructing waterways or roads. On the other hand, the legislative findings supporting the Act, which authorizes the creation of county development districts, state:

> The creation of development districts *is essential to the accomplishment* of Section 52-a, Article III, Texas Constitution [legislature may provide for programs that further the purpose of development and diversification of the state's economy], *and to the accomplishment of* the other public purposes stated in this chapter [developing and diversifying the economy of the state by providing incentives for projects that will attract visitors and tourists] and *further serves the purpose of* Section 59, Article XVI, and Section 52, Article III, Texas Constitution.

Tex. Loc. Gov't Code Ann. § 383.003 (emphasis added).

Although a county development district may incidentally or further serve the public purpose of improving or constructing waterways or roads or conserving and developing natural

19

resources, such overlap in purpose does not transform a county development district into a kind of district that it is not. County development districts are created under the Act; they are not created under section 52, article 3 and section 59, article 16 of the constitution just because their creation furthers the purpose of those provisions. Although some of the same constitutional language provides the impetus for the creation of two different kinds of districts—county development versus conservation and reclamation—this does not mean that the districts are functionally equivalent. County development districts derive from a section of the constitution that specifically allows for their creation to support economic development. No part of the Act speaks to the purpose of conserving or reclaiming water and other resources—although a project of a county development district that happens to conserve or develop natural resources would certainly not be prohibited. Thus, because the legislation refers by name to a particular type of district created under particular constitutional provisions, it cannot include a different type of district created under a separate statute and pursuant to a different constitutional provision. Although one district may be "created under" a certain constitutional provision, while another district "further serves the purpose" of that same constitutional provision, they remain distinct.

Furthermore, the title of Senate Bill 1444 reveals an intent that it apply only to water districts: "An Act relating to the general powers and authority of water districts." *See* Act of May 26, 2001, 77th Leg., R.S., ch. 1423, 2001 Tex. Gen. Laws 5069. Bills cannot contain more than one subject, and their titles shall give the public reasonable notice of that subject. *See* Tex. Const. art. III, § 35(a), (b). Although the District notes that no act of the legislature may be held *void* for a

20

deficiency in title, Tex. Const. art. III, § 35(b), (c), *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452 (Tex. 2000), here the question is not whether Senate Bill 1444 is void, but whether it applies to county development districts. Because the legislature is presumed to have intended compliance with the constitution, *see Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 715 (Tex. 1990), we hold that Senate Bill 1444 does not apply to county development districts, but only to water districts, specifically conservation and reclamation districts. Therefore, Senate Bill 1444 did not retroactively validate the assessments levied here. We sustain the Homeowners' fifth issue and hold that the assessments are invalid because they were neither authorized by incorporation nor retroactively validated. The trial court, therefore, erred in granting summary judgment for the District.

## CONCLUSION

The Homeowners were not required to exhaust administrative remedies because the issue before the trial court was purely a question of law and because the Act did not incorporate the procedures of chapter 375. The District did not have statutory authority to levy special assessments against the Homeowners under the incorporation by reference in section 383.061 of the powers of chapter 375 because the special-assessment power is not unmistakably conferred and is inconsistent with the Act. Likewise, Senate Bill 1444, passed in 2001, did not retroactively validate the District's special assessments because the bill applied only to conservation and reclamation districts, not county development districts. The trial court, therefore, erred in granting summary judgment in favor of the District and against the Homeowners. We hold that the Homeowners were entitled to summary judgment in their favor that the order levying the assessments was invalid. However,

21

because the trial court's order ruled on other issues not before us on appeal,[6] we remand this cause for further proceedings not inconsistent with this opinion.

 

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Reversed and Remanded

Filed:   March 18, 2004

---

[6] The trial court's order also declared that the lease-purchase agreement and its subsequent amendment, the payments under which were to be made from the assessments, were valid and pursuant to proper statutory authority.  The Homeowners have not asserted any issues with respect to this agreement on appeal and have not asked this Court to render summary judgment in their favor.

22