# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00198-CV

**Jos. A. Bank Clothiers, Inc., Appellant**

**v.**

**Cazzola Plumbing, Inc. and Unicco Service Co., Appellees**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 02-073-C277, HONORABLE KEN ANDERSON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a take-nothing final summary judgment order in favor of appellees Cazzola Plumbing, Inc. ("Cazzola") and Unicco Service Co. ("Unicco") (collectively "Appellees"). Appellant Jos. A. Bank Clothiers, Inc. ("Jos. A. Bank") argues that the district court erred in finding no evidence to support its negligence claim, in failing to exclude certain late-filed summary judgment evidence, and in considering an untimely motion to strike certain summary judgment evidence. We will affirm the order of the district court.

## BACKGROUND

Jos. A. Bank owns and operates a men's clothing store located in the Arboretum at Great Hills Shopping Center in Austin, Texas ("Arboretum"). The Arboretum is owned by SPG ARB Associates, L.P., ("SPG"), which leased space to Jos. A. Bank. In February 2001, SPG entered

into a contract with Unicco to manage the property, including cleaning all sanitary waste lines at the Arboretum. Unicco subcontracted the job of cleaning the sewer lines to Cazzola, a plumbing company that had been cleaning the lines since 1989. Sewer lines are cleaned by a process called hydrojetting, in which a high-pressure water hose is inserted into a manhole and run through a segment of pipe.[1] Unicco directed Cazzola to hydrojet the sewer line from manholes designated C-5 through C-8.

On October 21, 2001, Jos. A. Bank's store was flooded with raw sewage. The flooding was caused by a blockage in the sewer line servicing the store. The blockage formed somewhere between manholes C-5 and C-4, downstream from the area Cazzola serviced.[2] The flooding contaminated Jos. A. Bank's inventory, created a health hazard, and caused damage to the store structure itself. Although the sewer line was immediately cleared, Jos. A. Bank's store was closed while the inventory was replaced and the store was decontaminated and repaired.

---

[1] A hydrojet machine consists of a motor, a water pump, a hose, and a specially designed nozzle attached to the end of the hose. Proper operation of the hydrojet machine is as follows: the operator pulls the cover for the sanitary sewer line; turns on the machine; inserts the hose into the manhole and runs it up the sewer line going upstream, against the flow of water; water is pumped into the hose at a certain pressure, and the pressurized water sprays out of the sides of the nozzle at an angle; the pressurized water feeds the hose up the sewer line and cleans the line by removing deposits that have formed on the walls of the line; when the hose reaches a stopping point, usually the next manhole upstream, the operator pulls the hose back still spraying water; while the hose is spraying, the operator is looking down into the manhole watching the water flowing down the line; if the water coming back is clear, the job is complete; if not, the procedure is repeated.

[2] The water entered Jos. A. Bank's store through a floor drain that all parties agree had been improperly sealed.

Jos. A. Bank filed suit against Unicco and Cazzola for negligence, breach of contract, and breach of warranty.[3] Jos. A. Bank alleges that Cazzola's failure to hydrojet the sewer line between manholes C-5 and C-4 caused waste to accumulate along the inside of that line segment. Eventually, Jos. A. Bank contends, the build-up of waste reduced the diameter of the sewer line until it completely obstructed the flow of sewage through the line, causing the line to back up and flood its store. Jos. A. Bank alleged that Unicco was negligent in failing to properly ascertain the sewer lines it was responsible for cleaning and for failing to instruct Cazzola to clean the segment between C-4 and C-5; that Cazzola was negligent for failing to independently determine the scope of its plumbing duties and verify the lines it was responsible for cleaning, which would have included the relevant segment; that the breach of those duties was the proximate cause of the flooding; that Unicco breached its contract with SPG to clean "all sanitary waste lines, as needed" and that Jos. A. Bank is an intended third-party beneficiary of the contract; that Unicco breached the warranty of good and workmanlike performance covering the cleaning service, and that Jos. A. Bank is an intended third party beneficiary of that warranty.

Cazzola filed a traditional motion for summary judgment and both Cazzola and Unicco filed no-evidence motions for summary judgment. *See* Tex. R. Civ. P. 166a; 166a(i). The district court granted all of the motions and rendered a take-nothing judgment. This appeal followed.

---

[3] Jos. A. Bank did not sue its landlord, SPG, because the lease contained a waiver of subrogation rights that prevents Jos. A. Bank from pursuing any action against SPG for damages recoverable through Jos. A. Bank's insurance company.

3

**Standard of review**

A no-evidence summary judgment is essentially a pretrial directed verdict; thus, we apply the same legal sufficiency standard in reviewing the no-evidence summary judgment as we apply in reviewing a directed verdict. *Jackson v. Fiesta Mart*, *Inc.*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.). A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *See Fort Worth Osteopathic Hosp. v. Reese*, *Inc.*, 148 S.W.3d 94, 99 (Tex. 2004); *Cantu v. Texas Workforce Comm'n*, 145 S.W.3d 236, 239 (Tex. App.—Austin 2004, no pet.). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions. *Forbes*, *Inc. v. Granada Biosciences*, *Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). In a traditional motion for summary judgment, by contrast, the party moving for summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Rhone-Poulenc*, *Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999); *see also Voice of the Cornerstone Church Corp. v. Pizza Prop. Partners*, 2005 Tex. App. LEXIS 1804, at *22-23 (Tex. App.—Austin March 10, 2005, no pet.). Summary judgments must stand on their own merits. *Willrich*, 28 S.W.3d at 23.

4

The standard for reviewing a summary judgment on appeal is well established: (i) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law; (ii) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (iii) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645-46 (Tex. 2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *Henry v. Kaufman County Dev. Dist. No. 1*, 150 S.W.3d 498, 502 (Tex. App.—Austin 2004, pet. dism'd by agr.). The propriety of summary judgment is a question of law; therefore, we review the trial court's decision *de novo*. *Natividad v. Alexsis*, *Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

## DISCUSSION

In its first three issues, Jos. A. Bank complains that the court erred in granting the summary judgment motions because Jos. A. Bank's summary judgment evidence raised genuine issues of material fact regarding each element of its negligence claims.[4] In its fourth issue, Jos. A. Bank argues that the district court erred in failing to exclude as evidence the affidavits of Bruce Bradford, SPG's area manager, and Douglas Grant, Unicco's operations director. Finally, Jos. A. Bank argues the court erred in considering Cazzola's untimely motion to strike the affidavit of its expert, Paul Wilson.

---

[4] Jos. A. Bank has not appealed the court's order granting summary judgment on its contract and warranty claims.

**Unicco and Cazzola's no-evidence motions for summary judgment**

Jos. A. Bank complains that the district court erred in granting Unicco and Cazzola's no-evidence motions for summary judgment because there is more than a scintilla of evidence to support the duty and proximate cause elements of its negligence cause of action. To reverse the district court's grant of the no-evidence motions for summary judgment, we must determine that Jos. A. Bank presented more than a scintilla of evidence on each element of its negligence claim. The elements of a negligence cause of action are the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *Doe v. Boys Clubs*, 907 S.W.2d 472, 477 (Tex. 1995). If Jos. A. Bank failed to raise a fact issue regarding even one element, we must affirm. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

We need not address whether Jos. A. Bank has raised fact issues regarding duty and breach because we find no evidence of causation. Jos. A. Bank produced as summary judgment evidence the maintenance agreement between SPG and Unicco; the service agreement between Unicco and Cazzola; the affidavit and report of its surveyor, Charles Malone; the affidavit and report of its plumbing expert, Paul Wilson; and excerpts from the depositions of Douglas Grant, Charles Cazzola, Dennis Craig, and Phillip McCammon. But Jos. A. Bank's only evidence in support of its contention that the failure to clean the relevant section of sewer line was the proximate cause of the flooding was the affidavit of its plumbing expert, Paul Wilson. According to his affidavit, Wilson determined that the failure to clean the sewer line between manholes C-4 and C-5 had caused a gradual build-up of dirt and debris which eventually completely obstructed the flow of sewage. Unicco and Cazzola objected to the admission of the Wilson affidavit on several grounds, including

6

that it was wholly inconsistent with Wilson's deposition testimony.[5]  For example, in his deposition

testimony, Wilson could not say whether there was an accumulation of dirt and grease in the line or

what the ultimate cause of the obstruction was.  In its fifth issue, Jos. A. Bank argues that if the trial

court had excluded the Wilson affidavit, such exclusion would constitute error.  The district court

did not make an express ruling on the admissibility of the Wilson affidavit when it granted Unicco

and Cazzola's motions for summary judgment.

Even if the affidavit was properly in evidence, the district court did not err in granting

the motions because the affidavit does not constitute more than a scintilla of evidence of proximate

cause.  A no-evidence point will be sustained when (a) there is a complete absence of evidence of

a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only

evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than

a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.  *Havner*,

953 S.W.2d at 711.  More than a scintilla of evidence exists if the evidence would allow reasonable

and fair-minded people to differ in their conclusions.  *Forbes*, *Inc.*, 124 S.W.3d at 172.  In

attempting to present a scintilla of evidence, however, an expert's bare opinion will not suffice.  "It

is not so simply because 'an expert says it is so' . . . [w]hen the expert 'brings to court little more

than his credentials and a subjective opinion,' this is not evidence that would support a judgment."

*Havner*, 953 S.W.2d 706 at 712 (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421-422 (5th Cir.

1987)).

---

[5] Unicco and Cazzola also objected to the affidavit on the grounds that it was late-filed. Because we conclude that the affidavit was no evidence, we do not reach the issue of whether it was timely filed.

7

The Texas Supreme Court has identified six non-exclusive factors that trial courts should consider to determine whether an expert's testimony is reliable and thus admissible: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses which have been made of the theory or technique. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995). The Court has also recognized that the factors listed in *Robinson* cannot be used with certain kinds of expert testimony. However, there still must be some basis for the opinion offered to establish its reliability. In some situations, the witness's skill and experience alone may provide a sufficient basis for the expert's opinion. Tex. R. Evid. 702. *Volkswagen of Am.*, *Inc. v. Ramirez*, 159 S.W.3d 897, 905 (Tex. 2004). In any case, the expert must show the connection between the data relied on and the opinion offered. *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 726 (Tex. 1998). The affidavit must somehow bridge the "analytical gap" between the data on which the expert relies and the opinion offered. *Volkswagen*, 159 S.W.3d at 904-05; *see also McGee v. Deere & Co.*, 2005 Tex. App. LEXIS 2179, at *15-17 (Tex. App.—Austin March 24, 2005, pet. filed) (stating that attorney's failure to address essential factor of reasonableness made affidavit insufficient to support award of attorney's fees on summary judgment). If the opinions offered in an affidavit are conclusory, speculative, or unsupported by evidence, the affidavit cannot be considered to defeat a motion for summary judgment. *McIntyre*

*v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003) (conclusory statement of expert witness is insufficient to create question of fact to defeat summary judgment); *see also Burrow v. Arce*, 997 S.W.2d 229, 235-236 (Tex. 1999); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991).

Wilson states in his affidavit that "an accumulation of dirt and grease in the sewer line between manholes C-4 and C-5 caused the blockage." However, Wilson does not refer to any evidence in the record to support this assertion. Wilson's affidavit also refers to a video documenting the inside of the sewer line. It is undisputed, however, that this video, which was made by Cazzola two days after the flood occurred, does not show the actual location of the alleged blockage. Additionally, Wilson never explained how the video was relevant to his assessment of the cause of the blockage, and therefore never bridged the "analytical gap" between the evidence and his opinion. *See Volkswagen*, 159 S.W.3d at 906 (expert witness never explained how tests supported his opinion, therefore opinion was conclusory and constituted no evidence of causation). Wilson hypothesizes that Cazzola's failure to hydrojet the sewer line caused the build-up of dirt and grease, but offered no evidence that this was what actually happened. *See Gammill*, 972 S.W.2d 713 at 727-728 (expert's testimony of what could have happened, without evidence that it did happen, offered little more than subjective speculation).

Proximate cause cannot ordinarily be inferred merely from the existence of duty, breach, and harm. Under the doctrine of *res ipsa loquitur*, however, proximate cause may be inferred when the "injury would ordinarily not have occurred but for negligence, and defendant's negligence is probable." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 604 (Tex. 2004) (concurring

9

opinion). The doctrine is applicable only in situations where the injury does not ordinarily occur absent negligence and the instrumentality causing harm was under the defendant's management and control at the time that the negligence probably occurred. *Id.* at 603-604. The possibility of other causes does not have to be completely eliminated, but their likelihood must be so reduced that a jury could reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant's door. *Id.* This, in essence, is what Jos. A. Bank advocates that we should apply—infer from the fact that a blockage occurred that negligence caused the event. But, in this case, every witness with knowledge of sewer lines, their maintenance, and their problems, agreed that a blockage can occur at any time and for a variety of reasons. A blockage can occur instantaneously, and can occur no matter how frequently and how thoroughly a line is cleaned. It is thus not the type of event that occurs only because of negligence. And, without any evidence of what the blockage actually was, Jos. A. Bank has not reduced the likelihood of other causes besides negligence on the part of Unicco and Cazzola.

Jos. A. Bank has offered only circumstantial evidence to try to establish that there was a build-up of dirt and grease caused by Unicco and Cazzola's failure to clean the sewer line. While circumstantial evidence may be used to establish any material fact, the circumstances relied on must have probative force sufficient to constitute the basis of a legal inference; we are not empowered to convert mere suspicion or surmise into some evidence. *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993). "The law does not permit the pyramiding of one assumption upon another because an ultimate fact thus arrived at is too conjectural and speculative to support a judgment."

10

*Rounsaville v. Bullard*, 276 S.W.2d 791, 793-794 (Tex. 1955); *In the Interest of S.S.G.*, 153 S.W.3d 479, 484 (Tex. App.—Amarillo 2004, pet. denied). Here, Jos. A. Bank invites us to infer that there was a build-up of dirt and grease caused by Unicco and Cazzola's failure to clean the sewer line (although there was no evidence that there actually was such a build-up) and from this we are to infer that the build-up caused the blockage (although there was no evidence of what the blockage actually was). Jos. A. Bank has stacked one inference on another, but has not presented any probative evidence of causation.

Only Wilson's conclusory opinion was presented to establish causation. Therefore, as a matter of law, the Wilson affidavit is no evidence of proximate cause. *See Coastal Terminal Operators v. Essex Crane Rental Corp.*, 2004 Tex. App. LEXIS 7237, at *23-24 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (statements in affidavit regarding attorney's fees are conclusory, and therefore no evidence). Jos. A. Bank's fifth issue is overruled. Moreover, because there was no evidence of proximate cause, we overrule Jos. A. Bank's first and second issues, and affirm the district court's granting of Unicco and Cazzola's no-evidence motions for summary judgment. We do not reach Jos. A. Bank's fourth issue regarding the consideration of Unicco's late-filed summary judgment evidence.

**Cazzola's traditional motion for summary judgment**

Because we affirm the district court's granting of Cazzola's no-evidence motion for summary judgment, it is not necessary to address Jos. A. Bank's third issue of whether the district court properly granted Cazzola's traditional motion for summary judgment.

11

## CONCLUSION

Having overruled all of Jos. A. Bank's issues, we affirm the order of the district court.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   June 9, 2005