Opinion issued May 24, 2007














Opinion issued May 24, 2007

 

     

 

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-06-00458-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



DAVID C. HICKMAN, Appellant

 

V.

 

ROYCE DUDENSING, Appellee

 

 



On Appeal from the 155th District Court

Austin County, Texas

Trial Court Cause No. 2002V-0088

 








 



MEMORANDUM OPINION

 

          In
this construction-defect case, David Hickman appeals an adverse take-nothing judgment
on a jury verdict in favor of appellee, Royce Dudensing.  Hickman sued Dudensing for violations of the
Deceptive Trade Practices-Consumer Protection Act (“DTPA”)[1] and
breach of contract, alleging that he failed to remodel Hickman’s residence in a
good and workmanlike manner.  On appeal,
Hickman contends (1) the fact that Dudensing did not perform in a good and
workmanlike manner is established as a matter of law by the judicial admissions
or quasi-admissions of Dudensing and his employees, (2) the evidence is legally
and factually insufficient to support the jury’s verdict, and (3) the trial
court erred in directing a verdict on his DTPA claims on the basis of limitations.  We affirm.

Background

          Hickman
purchased a cluster of adjoining buildings located in New Ulm, Texas, intending
to renovate them into a residence, an art studio, and a bed and breakfast.  The buildings were originally constructed in
1890.  Hickman drew up blueprints and
specification sheets for the remodeling work and asked Dudensing to bid on the
project.  The specification sheets
provided in part as follows:

Work to Be Done:

-Caulk holes where needed

-Check windows/caulk – replace where needed

-Roof: repair leaks, remove rust (?) seal with colored
paint/sealer

-Paint exterior walls and trim

*Fix
exterior wall of back building (west end)

Put deck above tin roof off on second story.  Steps down to yard                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                from
deck

-Repair, seal, paint metal roofs

 

Dudensing inspected the property and
informed Hickman that he could not guarantee that the roof would stop leaking
because “you can’t take an old roof and try to make it where it’s preventable
from leaking.”  He suggested installing a
new roof, but Hickman refused because he “liked the old style of the metal
design roof.”  Dudensing testified that
he insisted on installing a new roof, but Hickman “said no because . . . money
wasn’t available and he wanted to keep the old style.  He insisted we fix it the best we could, and
try to get all the leaks fixed we could.”

The parties subsequently signed a
contract for the remodeling work. 
Hickman agreed to pay Dudensing $75,419, and Dudensing agreed to perform
the renovations in a good and workmanlike manner.  Dudensing completed the project in March
1998.  

A month later, Hickman sent Dudensing
a thank-you letter complimenting his work. 
Hickman testified that, even though he had noticed some cracks in the
exterior walls by the time he wrote the letter, overall he thought Dudensing
had done a good job, and “the building looked good” when he moved in.  Over the course of the next several months,
however, Hickman testified that the building began to deteriorate.  The roof started leaking, and Hickman eventually
had to use fifty-nine buckets to catch water from the leaks.  The exterior paint began to peel in places,
and the building developed more cracks. 
The exterior steps swayed so badly that Hickman had to repair them
himself.  Hickman testified that he and
his wife could feel “a breeze coming . . . through the walls and around the
trim” of the stained glass windows that Dudensing had installed.

While shopping in a neighboring town
in April 1998, Hickman saw Dudensing’s wife and told her that there was a
problem with the roof that he needed to discuss with Dudensing.  Dudensing failed to respond.  He did, however, fix the plumbing on a
bathtub that had ruptured in April 1998. 
After that point, Hickman testified that, with the exception of two
occasions when Dudensing sent workers to fix some electrical wiring, plumbing,
and the roof, Dudensing failed to respond to the numerous messages he and Mrs.
Hickman left regarding repairs from 1999 until 2001.  Mrs. Hickman testified that she called Mrs.
Dudensing for the final time regarding repairs in February 2001.  Mrs. Dudensing told Mrs. Hickman to “quit
harassing them and leave them alone.”  At
that point, the Hickmans realized that Dudensing was not going to perform any
additional repairs.  Hickman sued Dudensing
for DTPA violations and breach of contract in November 2002, four years after
he first noticed the various problems.

At the conclusion of Hickman’s
case-in-chief, Dudensing moved for a directed verdict on the basis of
limitations.  The trial court denied the
motion with respect to Hickman’s breach of contract claim, which has a
four-year statute of limitations,[2] but
instructed a verdict on the DTPA claims, which have a two-year statute of
limitations.[3]

Dudensing then presented his
case-in-chief.  He testified that he
performed the renovations in a good and workmanlike manner, and that the roof
began to leak because “the metal [wa]s over 50, 60 years, maybe older.  And ain’t much you can do with metal like
that.  You can try to do your best and,
you know, four, five years, they can go to rusting further and leaking.”  He testified that he used the best primer and
paint available, but the paint nonetheless began to peel in places because
“[s]ome . . . old wood will not hold paint, I don’t care what you do to
it. . . .   If the wood is
that old and . . . in that kind of condition, you can expect it to peel after a
period of time.”  He further testified
that some boards began to crack after he painted them because of weather
conditions: “If you got any cracks, it comes from the weather . . . .  It does not come from workmanship, it does
not come from paint.  It comes from the
weather.”  Several of Dudensing’s workers
similarly testified that they performed the renovations in a good and
workmanlike manner and that problems arose because of the building’s age—not
because of poor workmanship.

The jury found that Dudensing did not
fail to comply with his obligation under the contract to remodel the property
in a good and workmanlike manner.  The
trial court subsequently entered a take-nothing judgment against Hickman and this
appeal followed.

Quasi-Admissions

          In
his first and second issues, Hickman contends the fact that Dudensing failed to
remodel the property in a good and workmanlike manner is established as a
matter of law by the judicial admissions or quasi-admissions of Dudensing and
his employees.  Specifically, Hickman
points to Dudensing’s testimony that some of the paint peeled off before a
reasonable period of time and that he did not employ a licensed electrician or
plumber, even though he represented that he would.  Hickman also notes that Dudensing’s employees
testified that the paint was peeling badly, that the roof rusted sooner than it
should have, and that stairs should not shake from side to side.

          A
“true judicial admission” is “a formal waiver of proof usually found in
pleadings or the stipulations of the parties. 
A judicial admission is conclusive upon the party making it, and it
relieves the opposing party’s burden of proving the admitted fact, and bars the
admitting party from disputing it.”  Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.,
606 S.W.2d 692, 694 (Tex. 1980).  “Quasi-admissions,” on the other hand, are “a
party’s testimonial declarations which are contrary to his position . . .
.  They are merely some evidence, and
they are not conclusive upon the admitter. 
The weight to be given such admissions is decided by the trier of
fact.”  Id.
(internal citations omitted).

          On
occasion, however, as a matter of public policy, a party’s testimonial
quasi-admission will preclude recovery if it meets certain requirements set
forth by the Texas Supreme Court in Mendoza.  Id.  “The public policy underlying this rule is
that it would be unjust to permit a party to recover after he has sworn himself
out of court by clear, unequivocal testimony.” 
Id.  A quasi-admission will be treated as a
judicial admission if the following factors are met: (1) the declaration was
made during the course of a judicial proceeding; (2) the statement is contrary
to an essential fact embraced in the theory of defense asserted by the person
giving the testimony; (3) the statement is deliberate, clear, and unequivocal;
(4) giving conclusive effect to the declaration will be consistent with the
public policy upon which the rule is based; and (5) the statement is not also
destructive of the opposing party’s theory of recovery.  Id.

Dudensing’s Testimony

          We
first note that, contrary to Hickman’s contention, Dudensing did not make any
sort of formal judicial admissions.  He
did not stipulate to anything, and Hickman does not point to any formal waiver
of proof found in Dudensing’s pleadings. 
See id.  Rather, the testimony upon which Hickman
relies constitutes, at most, a quasi-admission.  See id.  As such, we must determine whether it
satisfies the five-prong Mendoza
test for treating a quasi-admission as a judicial admission.  See id.

          Hickman
relies upon three statements made by Dudensing. 
The first is his testimony that some of the paint peeled off before a
reasonable period of time.  When read in
context, however, this statement is not clear and unequivocal and thus does not
satisfy the Mendoza
test.  See id.  Specifically, the
entirety of Dudensing’s testimony is as follows:

Q       And in
your opinion, has some of that paint peeled off before a reasonable period of
time?

 

A       Yes.  Some of it has, but then again, you look at
some of the pictures, it looks good. 
Paint still is good.  Depends on
which part of the building it is on, and it depends on what, which side the
weather hit the most.

 

          Similarly,
Dudensing’s testimony regarding the use of a licensed electrician and plumber
is not clear and unequivocal when read in context.  Though Dudensing admitted that he did not use
a licensed electrician or plumber, as he had represented he would, he also
testified that the licensed electrician he had intended to use turned down the
job: “He wouldn’t mess with it.  He c[a]me
by and looked at it [the building] and . . . he turned it down.”  Dudensing testified that Hickman was present
when the electrician declined to accept the job.

          The
statements on which Hickman relies are merely isolated portions of Dudensing’s
trial testimony that are taken out of context. 
When read in context, and when considered in light of the entirety of
Dudensing’s testimony that he performed the renovations in a good and
workmanlike manner, we hold that these statements are not “deliberate, clear,
and unequivocal.”  See id. at 693, 695 (in worker’s compensation case, holding that
Mendoza’s testimony “that his physical condition was such that he was totally
unable to work prior to [a certain date]” was not deliberate, clear, and
unequivocal because it did not “exclude the possibility that his opinion was
mistaken in that it may have comprehended factors other than his physical
condition such as his ability to obtain employment as a manual laborer or the
availability of jobs in his community”); Drake
v. Spriggs, No. 13-03-429-CV, 2006 WL 3627716, at *3 (Tex. App.—Corpus
Christi Dec. 14, 2006, no pet.) (mem. op.) (holding that appellee’s statement
during deposition that he had received funds to which he was not entitled was
not clear and unequivocal in light of entirety of deposition testimony, since
appellee made other statements defending his entitlement to funds).  As such, Dudensing’s testimony does not meet
the Mendoza
test for treating a quasi-admission as a judicial admission.  See
606 S.W.2d at 694.  Accordingly, the jury
was free to determine the weight to give Dudensing’s statements.  See id.

Workers’ Testimony

          Hickman
also asserts that certain statements made by Dudensing’s workers regarding
peeling paint, rust on the roof, and shaky stairs constitute quasi-admissions
that meet the Mendoza
test.  He does not cite any authority to
support his proposition that the testimonial declarations of a non-party witness may constitute
quasi-admissions binding on a party, and we have not found any.  To the contrary, quasi-admissions are “[a] party’s testimonial declarations
which are contrary to his position.”  Id. (emphasis
added).  Hickman sued Dudensing in his
individual capacity, and none of the workers who testified are parties to the
case.  We thus reject Hickman’s
contention that certain statements made by Dudensing’s workers constitute
quasi-admissions.

Even were we to regard these
statements as quasi-admissions, they do not meet the Mendoza test for the same reason that Dudensing’s testimony does
not meet the Mendoza test—none of the
statements are deliberate, clear, and unequivocal.  See id.  When read in context, and when considered in
light of the entirety of the workers’ testimony that they performed the
renovations in a good and workmanlike manner, they do not rise to the level of
quasi-admissions that should be treated as judicial admissions.  See id.;
Drake, 2006 WL 3627716, at *3.  As such, the jury was free to determine the
weight to give these statements.  See Mendoza,
606 S.W.2d at 694.

Sufficiency of the Evidence

          In
his third and fourth issues, Hickman contends that the evidence is legally and
factually insufficient to support the jury’s verdict, and that the trial court
erred in denying his motion for judgment notwithstanding the verdict or for a
new trial.

Standard of Review

In a legal sufficiency
challenge by a party with the burden of proof at trial, we examine the entire
record to determine if the contrary proposition is established as a matter of
law.  See City
of Keller v. Wilson, 168 S.W.3d 802, 817, 825-26 (Tex.
2005) (entire record); Sterner v. Marathon Oil Co., 767
S.W.2d 686, 690 (Tex. 1989).  Only if the contrary proposition is
established as a matter of law will we sustain the issue.  Sterner,
767 S.W.2d at 690.  The test for legal
sufficiency is “whether the evidence at trial would enable reasonable and
fair-minded people to reach the verdict under review.”  City of Keller,
168 S.W.3d at 827.  In making this
determination, we credit favorable evidence if a reasonable fact-finder could,
and disregard contrary evidence unless a reasonable fact-finder could not.  Id.  So long as the evidence falls within the zone
of reasonable disagreement, we may not substitute our judgment for that of the
fact-finder.  Id.
at 822.  The trier of fact is the sole
judge of the credibility of the witnesses and the weight to give their
testimony.  Id.
at 819.  Although we consider the
evidence in the light most favorable to the challenged findings, indulging
every reasonable inference that supports them, we may not disregard evidence
that allows only one inference.  Id. at 822.

          When
a party attacks the factual sufficiency of an adverse finding on an issue on which
he had the burden of proof at trial, he must demonstrate on appeal that the
adverse finding is against the great weight and preponderance of the
evidence.  Ulogo v. Villanueva, 177 S.W.3d 496, 499 (Tex.
App.—Houston [1st Dist.] 2005, no
pet.).  In reviewing a factual
sufficiency point, we consider all the evidence supporting and contradicting
the finding.  Plas-Tex, Inc. v. U.S.
Steel Corp., 772 S.W.2d 442, 445 (Tex.
1989).  We set aside the verdict only if
the finding is so against the great weight and preponderance of the evidence as
to be clearly wrong and unjust.  Ulogo, 177 S.W.3d at 499.  Jurors are the sole judges of the credibility
of the witnesses and the weight to give their testimony.  City of
Keller, 168 S.W.3d at 819.  They may choose to believe one witness and
disbelieve another.  Id.

Charge Error

          As
an initial matter, Hickman complains that the trial court erred in submitting a
broad-form question to the jury regarding whether Dudensing remodeled the
property in a good and workmanlike manner. 
He observes that, “[a]lthough a practice of a global submission does
streamline and simplify the issues submitted to the jury, in some instances,
such as this one, it leaves the parties in a position of wondering why certain
obvious evidence was apparently disregarded by the jury.”  He notes that some components of the project
were “good” and others were “bad,” but the global submission “did not allow the
jury flexibility to answer partially yes and partially no.  To allow the verdict to stand effectively
allows the jury to ignore the portions of the job that were not completed in a
good and workmanlike manner because they, apparently, had been convinced that
some portions of the job were completed correctly.”

          If
a party believes that the trial court’s charge to the jury is defective, he
must make a timely and specific objection pointing out the matter complained of
and the grounds for the objection.  See Tex.
R. Civ. P. 274 (“A party objecting to a charge must point out distinctly
the objectionable matter and the grounds of the objection.  Any complaint as to a question, definition,
or instruction, on account of any defect, omission, or fault in pleading, is
waived unless specifically included in the objections.”); City of Houston v. Kolb, 982 S.W.2d 949, 956 (Tex. App.—Houston
[14th Dist.] 1999, pet. denied).  If the
objection does not fully comply with the requisites of Rule 274, the party
waives the complaint.  Kolb, 982 S.W.2d at 956 (citing Castleberry v. Branscum, 721 S.W.2d 270,
276 (Tex. 1986)).

          Here,
Hickman’s only objection to the charge was that it failed to include a DTPA
question.  Hickman did not object to the
charge on the ground that it was an improper broad-form submission.  Accordingly, we hold that Hickman has waived
any error concerning the broad-form submission of the breach of contract
question.  See id.

Legal and Factual Sufficiency

          Hickman
contends there is insufficient evidence to support the jury’s finding that
Dudensing remodeled the property in a good and workmanlike manner.  To support his argument, Hickman relies on
the same testimony discussed previously—namely, Dudensing’s observation that
the paint was peeling in places, and Dudensing’s workers’ testimony regarding shortcomings
with the work.

          The
jury charge defines “good and workmanlike manner” as “that quality of work performed
by one who has knowledge, training or experience necessary for the successful
practice of a trade or occupation and performed in a manner generally
considered proficient by those capable of judging such work.”  Though the jury heard testimony from
Dudensing and his workers that the paint was peeling badly in places and that
portions of the roof rusted sooner than they should have, it also heard
qualifying testimony from these witnesses that “some [old] lumber will not hold
paint” and “you can’t guarantee an old roof.” 
In particular, Dudensing testified that he repeatedly advised Hickman
that he should install a new roof because the old roof would become rusty and
begin leaking within a few years, but Hickman insisted on keeping the old
design because he liked it and could not afford to pay for a new roof.[4]

With respect to the peeling paint, Dudensing
testified that he used “the best” primer and paint available, and he
“prepared[d] the surface according to the specs of the plan, [but] some of
these old materials will not hold paint. 
Some lumber will not hold paint. 
Some metal will never hold paint. . . . 
I don’t care what you do to it. . . . 
If the wood is that old and . . . in that kind of condition, you can
expect it to peel after a period of time.” 
He further testified that the cracks in the boards “c[a]me[] from the
weather . . . .  [They] do[] not come
from workmanship, [they] do not come from paint.  [They] come[] from the weather.”  He also testified that the exterior stairs
were safe because he and his workers used them repeatedly to carry decking
materials to the top story.

Dudensing’s workers similarly testified that the
roof ought to have been replaced,[5] that paint often will not stick to old wood,
and that even when a window is installed properly, there will still be “[s]ome
air coming through it” because “the wood will swell up . . . and shrink.”  Moreover, when asked whether they remodeled
the property in a good and workmanlike manner, Dudensing and his workers
unequivocally testified that they did.[6]

          Although
the jury heard contradictory testimony from the Hickmans, the jury, as
fact-finder, was free to disbelieve the Hickmans’ testimony and instead believe
Dudensing’s testimony that he remodeled the property in a good and workmanlike
manner, and that the ensuing problems were not due to poor workmanship, but instead
to the age and condition of the building. 
See Barnett v. Coppell N. Tex.
Court, Ltd., 123 S.W.3d 804, 823 (Tex. App.—Dallas 2003, pet. denied)
(holding that jury is exclusive judge of witness credibility and weight to give
conflicting testimony in deciding whether contractor performed in good and
workmanlike manner).[7]

          Viewing
the evidence in the light most favorable to the verdict, we hold that the
evidence is legally sufficient to support the jury’s finding that Dudensing did
not fail to comply with his obligation to remodel the property in a good and
workmanlike manner.  See Tacon Mech. Contractors, Inc. v. Grant Sheet Metal, Inc., 889
S.W.2d 666, 673–74 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding
that evidence was legally sufficient to support jury’s verdict that contractor
performed in good and workmanlike manner where he maintained adequate staff on
each project, provided adequately experienced personnel, adequately supervised
his crews, and his crews performed their assigned tasks as well as they
could).  Moreover, considering all the
evidence supporting and contradicting the finding, we cannot say the jury’s
finding is so against the great weight and preponderance of the evidence as to
be clearly wrong and unjust.  See Ulogo, 177 S.W.3d at 499.  We
therefore hold that the evidence is factually sufficient to support the jury’s finding that Dudensing
did not fail to comply with his obligation to remodel the property in a good
and workmanlike manner. 
Given the sufficiency of the evidence to support the jury’s verdict, we
conclude that the trial court did not err in denying Hickman’s motion for
judgment notwithstanding the verdict or for a new trial.

DTPA Directed Verdict

          In
his final issue, Hickman contends the trial court erred in directing a verdict
on his DTPA claims on the basis of limitations. 
He asserts that “[t]he Courts have recognized that a continuing
misrepresentation is arguably a basis for negating an otherwise valid statute
of limitations defense.”  He points out
that Dudensing continued to send workers to his residence to fix various
defects, and it was not until February 2001 that it became clear Dudensing was
not going to correct any additional problems. 
Hickman notes that he filed suit in November 2002, less than two years
after Dudensing’s misrepresentations ceased.

          The
statute of limitations for Hickman’s DTPA claims is provided by section 17.565
of the Texas Business and Commerce Code, which incorporates a discovery
rule.  See Tex. Bus. & Com.
Code Ann. § 17.565 (Vernon 2002); J.M.
Krupar Constr. Co. v. Rosenberg,
95 S.W.3d 322, 329 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  DTPA claims must be brought

within two years after the date on which the false,
misleading, or deceptive act or practice occurred or within two years after the
consumer discovered or in the exercise of reasonable diligence should have
discovered the occurrence of the false, misleading, or deceptive act or
practice.  The period of limitation . . .
may be extended for a period of 180 days if the plaintiff proves that failure
timely to commence the action was caused by the defendant’s knowingly engaging
in conduct solely calculated to induce the plaintiff to refrain from or
postpone the commencement of the action.

 

Tex. Bus.
& Com. Code Ann. §
17.565.

          The
general rule in construction-defect cases is that “limitations begin to run
when an owner becomes aware of property damage.”  J.M.
Krupar, 95 S.W.3d at 329–30 (citing Ben
Fitzgerald Realty Co. v. Muller, 846 S.W.2d 110, 118–19 (Tex. App.—Tyler
1993, writ denied) (limitations began when damages began to show on the house);
Hanmore Dev. Corp. v. JBK Enters.,
776 S.W.2d 738, 740 (Tex. App.—Corpus Christi 1989, writ denied) (limitations
began when owner first discovered roof leak); Tenowich v. Sterling Plumbing Co., 712 S.W.2d 188, 189–90 (Tex.
App.—Houston [14th Dist.] 1986, no writ) (limitations began when owner
discovered leaks in pipe)).  “Moreover,
well-settled Texas precedent . . .
holds that repairs performed by a defendant do not toll the discovery rule for
plaintiffs and, thus, do not extend limitations.”  Hixon
v. Tyco Int’l, Ltd., No. 01-04-01109-CV, 2006 WL 3095326, at *8 (Tex. App.—Houston
[1st Dist.] Oct. 31, 2006, no pet.) (mem. op.) (citations omitted); see also Dean v. Frank W. Neal &
Assocs., Inc., 166 S.W.3d 352, 360 (Tex. App.—Fort Worth 2005, no pet.)
(“An unsuccessful effort to make repairs does not toll the statute of
limitations for purposes of determining when a cause of action accrued.”).  Here, Hickman was aware of property damage by
April 1998, when he informed Dudensing’s wife that he needed to speak with
Dudensing regarding roof problems. 
Hickman did not file suit until November 2002—well beyond the two-year
statute of limitations.

          Hickman
nonetheless contends that his suit is timely and relies on W.M. Riddick v. Quail Harbor Condominium Association, Inc. for the
proposition that “Courts have recognized that a continuing misrepresentation is
arguably a basis for negating an otherwise valid statute of limitations
defense.”  7 S.W.3d 663 (Tex.
App.—Houston [14th Dist.] 1999, no pet.). 
In Riddick, our sister court
held that Riddick’s cause of action under the DTPA accrued when Riddick “first
discovered the cracks in the walls.”  Id. at
671.  Though Riddick argued in his brief
that Quail Harbor had made “continuing misrepresentions” to him in the form of
promises to fix the foundation problem, and that limitations should therefore
be tolled, our sister court rejected Riddick’s argument, holding that he waived
it by failing to present it to the trial court. 
Id.
at 671, 678.  In determining whether
Riddick’s contention was groundless for the purpose of awarding Quail Harbor its attorney’s fees under
the DTPA,[8] however,
our sister court noted that the claim, although not proven, was
“arguable.”  Id. at 677–78.  The court therefore reversed the trial
court’s award of attorney’s fees to Quail Harbor.  Id. at 679.

          Determining
whether a claim is groundless for the purpose of imposing sanctions is
different from determining whether a party should prevail on that claim.  The limitations statute, section 17.565, does
not impose any sort of statutory tolling for continuing misrepresentations or
for a failure to complete repairs.  See Tex.
Bus. & Com. Code Ann. § 17.565. 
Though the statute includes a 180-day tolling provision if the plaintiff
is able to prove that the defendant knowingly engaged in conduct calculated
solely to induce the plaintiff to delay filing suit, Hickman does not rely on
this section of the statute.  See id. 
Nor does he raise the issue of fraudulent concealment.[9]  Rather, his brief deals solely with whether
Dudensing’s continuing representations that he would perform repairs are “a
basis for negating an otherwise valid statute of limitations defense.”

          The
Texas Supreme Court has not recognized, in the absence of fraud or fraudulent
concealment, equitable tolling for either the failure to complete repairs or
for continuing misrepresentations regarding repairs, and we decline to do
so.  See
Hixon, 2006 WL 3095326, at *8 (“The Hixons cite no authority that
authorizes delay of discovery of a liability cause of action against a
defendant until refusal to continue repair occurs, and we know of none.  [Thus, t]he Hixons are . . . mistaken in
contending that they had no cause of action against [appellees] until these
entities ‘refused outright’ to continue repairs . . . .”); see also Pako Corp. v. Thomas, 855 S.W.2d 215, 219 (Tex. App.—Tyler
1993, no writ) (“Neither the attempts to repair, nor [appellee]’s
representatives’ assurances of the success of the efforts, toll the running of
the statute of limitations.”).  We
therefore hold that the trial court did not err in granting a directed verdict
on Hickman’s DTPA claims on the basis of limitations.

Conclusion

 

          We
affirm the judgment of the trial court.

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief
Justice Radack and Justices Jennings and Bland.











[1]
Tex. Bus. & Com.
Code Ann. §§ 17.41, 17.46 (Vernon 2002
& Supp. 2006).





[2]
Tex. Civ. Prac. &
Rem. Code Ann. § 16.004 (Vernon 2002).

 





[3]
Tex. Bus. & Com.
Code Ann. § 17.565 (Vernon 2002).

 





[4] Specifically, Dudensing testified as follows: “[W]e
talked about putting a new roof on, but he wanted the old design kept on the
roof because he liked the old design. 
And like we told him from the beginning, it’s going to leak if you . . .
leave the roof the way it is.  You can
put a new roof on it, it would cost 25, $30,000.  It would have solved the problem.  But he wanted to keep the old design.  And you can’t guarantee an old roof, if you .
. . keep that kind of design [t]hat is on the roof.  And the metal is over 50, 60 years, maybe
older.  And ain’t much you can do with
metal like that.  You can try to do your
best and, you know, four, five years, they can go to rusting further and
leaking.”

 





[5]
In particular, Chris Supak, one of Dudensing’s
workers, testified as follows:

Q         That roof wasn’t that bad, was it?

A         The
roof was bad.  We had to crawl up there
and . . . prior to painting, we asked him, are you kidding us?  You need a new roof on this thing.”

 





[6] For example, when asked whether “the work that you did
and that you saw while you were there” was performed in a good and workmanlike
manner, Supak responded, “Yes, sir.  Like
if it was your own.” 

 





[7] Hickman notes that, at one point during the trial,
jurors notified the court that “Mrs. Hickman [wa]s distracting them with her
reaction to the witness.”  He urges that,
“[i]f the jury did not like the looks or actions of a particular party, witness
or attorney, it still should not be permitted to disregard evidence.”  The jury, however, is the exclusive judge of
the credibility of the witnesses and the weight to give their testimony.  Golden
Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003); Barnett v.
Coppell N. Tex. Court, Ltd., 123 S.W.3d 804, 823 (Tex. App.—Dallas 2003, pet. denied).  Because the jury is in a position to observe
“the mannerisms, the facial expressions and the verbalizations of the various
parties and witnesses in court before [it],” it is “free to reject” a witness’s
testimony based upon its observation of the witness’s demeanor and
attitude.  Silva v. Enz, 853 S.W.2d 815, 818 (Tex.
App.—Corpus Christi 1993, writ denied) (citing Greenway Bank & Trust v. Smith, 679 S.W.2d 592, 598 (Tex.
App.—Houston [1st Dist.] 1984, writ ref’d n.r.e.)); Davis v. McQueen, 842 S.W.2d 376, 386 (Tex.
App.—Beaumont 1992, writ denied).

 





[8] Texas Business and Commerce Code section 17.50(c)
provides that a defendant is entitled to recover its attorney’s fees in
defending a DTPA claim if it shows that the claim is “groundless in fact or law
or brought in bad faith, or brought for the purpose of harassment.”  Tex.
Bus. & Com. Code Ann. § 17.50(c) (Vernon Supp.
2006).

 





[9] Fraudulent concealment estops a defendant from relying
on limitations as an affirmative defense. 
Borderlon v. Peck, 661 S.W.2d
907, 908 (Tex.
1983); Winn v. Martin Homebuilders, Inc.,
153 S.W.3d 553, 557 (Tex. App.—Amarillo 2004,
pet. denied).  The elements of fraudulent
concealment are: (1) the existence of an underlying tort, (2) the defendant’s
knowledge of the tort, (3) the defendant’s use of deception to conceal the
tort, and (4) the plaintiff’s reasonable reliance on the deception.  Winn,
153 S.W.3d at 557.  Fraudulent
concealment tolls the running of limitations “because the defendant has
concealed from the plaintiff facts necessary for the plaintiff to know that he
has a cause of action against the defendant.” 
Id. at 556–59 (analyzing
fraudulent concealment claim in context of homebuilder’s assurances to
plaintiffs that “there was nothing wrong with the construction of their home
and the defects they observed were due to natural settling of the foundation”);
see also Hixon v. Tyco Int’l, Ltd.,
No. 01-04-01109-CV, 2006 WL 3095326, at *9 (Tex. App.—Houston [1st Dist.] Oct.
31, 2006, no pet.) (mem. op.) (analyzing
fraudulent concealment claim in context of contractors’ assurances that “there
were no remaining problems with the house”). 
Here, Hickman does not argue that Dudensing actively assured him that
there were no problems with the building. 
To the contrary, he asserts that Dudensing acknowledged that the
building had problems and continuously represented that he would fix them, but
failed to do so.