The CITY OF HOUSTON, Appellant,

v.

John E. KOLB, James W. McCartney, William M. Linden, Raymond S. Maislin, O. Scott Rogers, Betty Pulaski Weston, B. Red, Inc., Rachel S. Kolb, Dave Kaminsky, Robert I. Kaminsky, Stephen Kaminsky, Charles D. Kolb, James R. Sud, Trustees of The Judith Sud & Betty P. Sud Trust, & J.E. Roussel, Appellees.

No. 14–97–00133–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 7, 1999.

Laura Anne Coats, Houston, for appellant.

W. Allyn Hoaglund, Houston, for appellees.

Before Chief Justice MURPHY and Justices HUDSON and O'NEILL.

## OPINION ON REHEARING

### J. HARVEY HUDSON, Justice.

This is an appeal from a judgment against the City of Houston ("the City") based upon inverse condemnation of a piece of property. The trial court determined there was a "taking" or "damaging" of the property as a matter of law and the jury assessed actual damages in the amount of $1,305,819 plus pre- and post-judgment interest and attorney fees. · In three points of error, the City argues: (1) the controversy was not ripe for judicial determination; (2) there was insufficient evidence that seeking additional administrative remedies would be futile; and (3) the trial court erred in submitting the compensable damages issue to the jury. We affirm.

### Factual Background

In 1973, appellees (collectively referred to as the "Kolbs") purchased 640 acres of land located within the extraterritorial jurisdiction of Houston.[1] The northern half of this property was subsequently developed. In 1993, the Kolbs submitted an application for a subdivision plat to the City of Houston, requesting to subdivide the remaining 314 acres. Because the Kolbs' property was in the general vicinity of the proposed Grand Parkway,[2] the application was forwarded to the Grand Parkway Association for comment.[3] The Grand Parkway Association reviewed the application and refused to grant its approval because the proposed subdivision "would prohibit use of the Grand Parkway alignment corridor." Based upon these comments, the City's Planning Commission denied the application, stating "Plat does not

conform to the approved Major Thoroughfare and Freeway Plan." The application was also denied due to excessive block lengths.

One month later, the Kolbs resubmitted the application and requested a variance to allow the establishment of excessive block lengths. The Kolbs' application was again denied, stating solely, "Plat does not conform to the approved Major Thoroughfare and Freeway Plan." The Kolbs then filed this suit seeking a judicial determination that their property had been "taken" or "damaged" according to Article I, § 17 of the Texas Constitution and seeking just compensation.

Prior to trial, the City filed a motion to dismiss for lack of subject matter jurisdiction, alleging the Kolbs' claims were not ripe for judicial review. This motion was denied. The trial court held a hearing solely on the issue of whether a "taking" had occurred. After hearing the evidence, the trial court determined that the City had "taken" or "damaged" the Kolbs' property as a matter of law. A jury was then selected and the case proceeded on the issue of damages. After the close of evidence, the jury awarded $1.3 million in actual damages, plus attorney fees and pre- and post-judgment interest.

### Standard of Review

In three points of error, the City challenges the factual sufficiency of the evidence. In reviewing the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We will review fact findings in a bench trial for legal and factual sufficiency of the evidence by the same standards used in reviewing the evidence sup-

---

1. Extraterritorial jurisdiction refers to "the unincorporated territory extending 5 miles beyond the City limits of the City." Houston, Texas, Ordinances Ch. 42 Art. I § 42–7(21).

2. The Grand Parkway, which has been designated as State Highway 99, is a proposed six (6) lane, non-toll highway that will loop around the City of Houston. The proposed highway is approximately 170 miles in length. *See* Finding of Fact 1.

3. The Grand Parkway Association and the City of Houston have an arrangement whereby any subdivision or development plat that is in the vicinity of the proposed alignment for the Grand Parkway which is submitted to the City of Houston's Planning and Zoning Commission, is forwarded to the Grand Parkway Association for its review and comment. *See* Finding of Fact 28.

porting a jury's verdict. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). The trial court's conclusions of law, however, will be examined under a de novo standard. *See Piazza v. City of Granger,* 909 S.W.2d 529, 532 (Tex.App.—Austin 1995, no writ). In other words, we will follow a trial court's conclusion of law unless it is erroneous as a matter of law. *See id.*

## RIPENESS

The primary issue on appeal is whether the case was ripe for the trial court's consideration.[4] The City contends the case was not ripe because "no good faith or legally sufficient effort was made to comply with or obtain a final administrative ruling prior to filing the lawsuit." The City contends the Kolbs should have pursued their development request further than they did by either requesting a variance and/or a public hearing or discussing other alternatives with the City. The Kolbs, on the other hand, argue that seeking further administrative rulings would have been futile.

■ "A controversy in administrative law is 'ripe' for the courts when it has 'legally matured' within its province." *City of El Paso v. Madero Dev.,* 803 S.W.2d 396, 398 (Tex.App.—El Paso 1991, writ denied). "The ripeness doctrine conserves judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes." *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). "In order for a regulatory takings claim to be ripe, there must be a final decision regarding the application of the regulations to the property at issue." *Id.* at 929. "A 'final decision' usually requires both a rejected development plan and the denial of a variance from the controlling regulations." *Id.* Here, the City argues the Kolbs did not give the City the opportunity to make a final decision because they never filed a meaningful application for a subdivision plat and never sought a variance in relation to the Grand Parkway.

■ The City repeatedly asserts in its brief that the Kolbs' initial application was not prepared by an engineer. The City bases its claim on an affidavit from Vernon G. Henry, former Senior Planner for the City of Houston, stating that, in his opinion, "[t]here is no evidence that a civil engineer was involved in the formulation of the plat with respect to the evaluation of utility services and storm water drainage/detention options and public agency requirements. Indeed there was no evidence that *any* consideration had been given to these important and necessary elements." However, the Kolbs rebutted this attack by filing the affidavit of John Kolb, stating "Mr. Henry is completely in error when he states that the application for the Park Place Northwest Subdivision was not a meaningful plat. It was a meaningful plat in that it was submitted in good faith, had been prepared at substantial cost to the landowners by a professional engineer ..." In its findings of fact, the trial court concluded that the original plat was meaningful and prepared by Charles Kalkomey, an engineer with experience in residential subdivision development. As the fact finder, the trial court was entitled to resolve any conflicts in the evidence in favor of the Kolbs and we will not interfere with this decision. *See Taub v. City of Deer Park,* 912 S.W.2d 395, 399 (Tex. App.—Houston [14th Dist.] 1995, no writ).

■ The record shows the Kolbs did not apply for a variance in relation to the Grand Parkway. In fact, the Kolbs concede they never filed a variance; however, they argue that requesting a variance in relation to the Grand Parkway would have been futile. The Texas Supreme Court has recently recognized that "futile variance requests or reapplications are not required." *Mayhew,* 964 S.W.2d at 929. The plaintiffs in *Mayhew* owned approximately 1,196 acres of land in Sunnyvale. *See id.* at 925. This land had been used for ranching but, in 1985, the Mayhews began discussions with various Town officials seeking permission to proceed with residential development on the land. *See id.* The Mayhews told the officials that a

---

4. The issue of whether there was a "taking" has not been challenged by the City and therefore is not before this court for determination.

planned development would not be feasible under the current one-unit-per-acre zoning policy of the Town. *See id.* at 926. In 1986, the Town amended its zoning ordinances to allow planned developments with densities in excess of one dwelling-unit per acre. *See id.* The Mayhews submitted their planned development proposal to the Town in July, 1986, requesting permission to build between 3,650 and 5,025 units on the land. *See id.* A planning and engineering firm initially reviewed the proposal and recommended its approval to the Town's planning and zoning commission. *See id.* The commission, however, denied the application. *See id.* The Town council then appointed a committee to negotiate with the Mayhews and both sides tentatively agreed to a compromise development of 3,600 units. *See id.* The Town council met to consider the compromise in January 1987. *See id.* At the meeting, the Mayhews told the council that anything less than an approval for 3,600 units would be considered an outright denial. *See id.* The council voted to deny the Mayhews' proposal despite the prior compromise agreement. *See id.*

The Mayhews subsequently sued the Town, alleging among other things that the Town's decision was a taking of their property without payment of just or adequate compensation. *See id.* The Town moved for summary judgment and the trial court granted the motion. *See id.* However, the intermediate appellate court reversed the summary judgment on the Mayhew's constitutional claims against the Town. *See id.* On remand, the trial court concluded the case was ripe for adjudication and the Town's decision to deny the application was an unconstitutional taking. *See id.* at 927. The intermediate appellate court reversed, holding the claims were not ripe for review. *See id.* at 928. The court also concluded that, even if the Mayhews' claims were ripe, the evidence was insufficient to support the trial court's findings. *See id.*

The Supreme Court initially addressed the question of whether the Mayhews' claims were ripe for judicial review. *See id.* The Town argued that the Mayhews' claims regarding the denial of their application were not ripe because the Mayhews submitted only one planned development application and did not thereafter reapply for development or submit a variance. *See id.* at 931. The Mayhews, on the other hand, argued that their application and amended request for 3,600 units were sufficient, and that any further applications would have been futile. *See id.*

The Supreme Court recognized that generally, when a party fails to submit a re-application or request a variance, their claims are not ripe for judicial review. *See id.* However, the Court noted that the Mayhews spent over a year in negotiations with the Town, spent over $500,000 preparing and developing the application, compromised with the Town, altered their original proposal, and filed a modified application to the Town council. *See id.* The Court concluded that, "under the circumstances of this case, the Mayhews were not required to submit additional alternative proposals, after years of negotiations and $500,000 in expenditures, to ripen this complaint." *Id.* at 932.

We believe the same rationale is applicable here. The Kolbs submitted their original application for a subdivision plat on August 12, 1993. The application was denied based on excessive block lengths and failure to dedicate a right-of-way for the Grand Parkway. The Kolbs made changes to the application to comply with the block length requirement and resubmitted the application. However, on September 9, 1993, the application was denied solely because of the failure to comply with the City's plans for the Grand Parkway. The Kolbs then filed this suit, alleging that the City had "taken" or "damaged" their property.

At trial, several witnesses testified the sole reason the Kolbs' application was denied was because the proposed subdivision conflicted with the plans for the Grand Parkway. Carlos Zapata, a Senior Planner for the City, testified no variances had ever been granted for the approval of a subdivision plat wherein the Grand Parkway was proposed to intersect the property. Robert Litke, Director of the City's Planning Department, testified the Kolbs' application would not gain approval unless there was a dedication of at least a

hundred feet of right-of-way for the Grand Parkway. Litke stated the City requires this dedication of land as part of its Major Thoroughfare Plan. In addition, two consultants to the Grand Parkway Association testified the association protected the alignment of the Grand Parkway corridor so the costs of acquiring the right-of-way in the future would be decreased.[5] Based on this evidence, the trial court found the Kolbs would be required to dedicate or donate a right-of-way in order to obtain approval of their application for subdivision plat.

The evidence also showed that neither the planning and zoning commission nor the City had the authority to alter or amend the pathway of the Grand Parkway. Litke testified that the State Highway Department has exclusive jurisdiction over controlled access highways such as the Grand Parkway.

We conclude there was sufficient evidence the prove it would have been futile for the Kolbs to request a variance from, or seek alternative solutions with, the City. After the Kolbs' second application was denied, the City's position was clear—the Kolbs' application would not be approved unless a right-of-way was dedicated to the City for the Grand Parkway. Moreover, the City did not have the power or authority to relocate or alter the Grand Parkway's proposed pathway. We therefore hold that, to require the Kolbs to seek further variances or to hold a public hearing in front of the City's planning and zoning commission, an entity that has absolutely no power in relation to the Grand Parkway, would have been pointless. As the Supreme Court said in *Mayhew:*

> Any other holding would require the Mayhews to expend their own time and resources pursuing, and the Town's time and resources considering, a development proposal that the Mayhews would never actually develop. Requiring such a wasteful expenditure of resources would violate the Supreme Court's admonition that a proper-

ty owner is "not required to resort to piecemeal litigation or otherwise unfair procedures in order to obtain [a final] determination." [citation omitted]. The Town clearly was not going to approve the Mayhews' development proposal for 3600 units, making a subsequent application or variance request for 3,600 units a futile act.

*Mayhew,* 964 S.W.2d at 932.

The City argues *Mayhew* is distinguishable because the Mayhews engaged in extensive discussions and negotiations with the Town of Sunnyvale for over a year. The City points out that the Kolbs only met with one City planner and never attempted to reach a compromise with the City. However, in *Mayhew,* the Town had control over the zoning ordinances that were at issue. Here, it was clearly not within the control of the City to change the route of the Grand Parkway. Therefore, extensive discussions and negotiations that the City suggests were necessary to ripen the Kolbs' claims would have served no purpose.

We find this cause is ripe for judicial review. Accordingly, the trial court properly denied the City's motion to dismiss. The City's motion to dismiss is overruled.

### COMMONALITY TO THE COMMUNITY

The City's second point of error states, "the trial court erred in its finding that there was a taking by inverse condemnation without just compensation because there was insufficient evidence to support a finding that seeking further administrative remedies would be futile." However, the City's actual argument under this point of error is that the injury appellees received was "common to the community" and, therefore, may not be considered in estimating damages.[6] The City also argues that the Kolbs cannot recover for a future taking.

---

5. Several Texas courts have recognized that governmental entities cannot act to gain an unfair advantage by imposing restrictions or prohibitions on the use of property in order to prevent private development from increasing the cost of planned and future acquisition of the property. *See State of Texas v. Biggar,* 873 S.W.2d 11, 13 (Tex.1994); *City of Austin v. Teague,* 570 S.W.2d

389, 393 (Tex.1978); *San Antonio River Authority v. Garrett Bros.,* 528 S.W.2d 266 (Tex.Civ.App.— San Antonio 1975, writ ref'd n.r.e.).

6. The City never raised this argument in the trial court.

Courts allow recovery under Article I, Section 17 only if the injury is not one suffered by the community in general. *See Felts v. Harris County*, 915 S.W.2d 482, 484 (Tex.1996). Community injuries include highway traffic noise, dust, traffic hazards, and circuitous routes; injuries such as these are not compensable. *See id.* On the other hand, constitutional damages are warranted for a taking if the government makes a physical appropriation, denies access to property, or denies a permit for development. *See Westgate, Ltd. v. State*, 843 S.W.2d 448, 453 (Tex.1992).

The City argues that because the Grand Parkway is proposed to be approximately 170 miles in length, "the planned roadway will have a common or community effect upon the entire community within its planned right of way." [7] We disagree. Unlike other property owners who may eventually be affected by the visual impact, noise, traffic congestion, and other characteristics commonly associated with the close proximity of a major highway, the Kolbs have suffered a present and specific loss that is not common to all landowners. By its denial of the subdivision plat, the City has denied the Kolbs the free and unrestricted enjoyment of their property. Moreover, the record indicates the City will continue to deny the proposed subdivision plat unless and until the Kolbs agree to give the City a large portion of their property for possible use as a right-of-way for the Grand Parkway. In other words, the damages alleged by the Kolbs—the denial of a permit—were not shared by the community in general. Thus, the Kolbs' damages are different from those experienced by the community generally.

The City also alleges that, because the plans to construct the Grand Parkway intersecting the Kolbs' property are merely a proposal that may never come to fruition, the Kolbs cannot recover for a present taking. The City bases its argument on case law stating, "future plans which might result in a future taking are merely 'future prospects' and, as such, cannot constitute a taking."

*Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 821 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Further, "the announcement of a projected public improvement together with preparation of plans and maps showing the property in question within the limits of the project, without any interference with the landowner's use, does not constitute a present taking." *Id.* at 822. Here, however, the City has directly infringed upon the owner's current use of the property. *See Westgate*, 843 S.W.2d at 453 (recognizing that "publicly targeting a property for condemnation, resulting in economic damage to the owner, generally does not give rise to an inverse condemnation cause of action *unless there is some direct restriction on use of the property.*"). We find, therefore, that the Kolbs have suffered a real and current taking.

Accordingly, the City's second point of error is overruled.

## COMPENSABLE DAMAGES

In its third point of error, the City argues the trial court erred in allowing the compensable damages issue to be submitted to the jury because there was insufficient evidence to support a finding of compensable damages at the hearing on the taking. Building on its argument under its second point of error, the City contends that, because the damage sustained by the Kolbs was common to the community, they were not entitled to any compensation.

First, we find the City has not properly preserved this argument for our review. Rule 274 of the Texas Rules of Civil Procedure provides:

A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections.

7. The City does not elaborate on this argument or explain what specific damages the community landowners will suffer in common.

Tex.R. Civ. P. 274. The purpose of Rule 274 is to afford trial courts the opportunity to correct errors in the charge by requiring that any objection made clearly designate the error and explain the grounds for complaint. *See Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex.1987). Therefore, when a particular instruction included in the trial court's charge to the jury is defective, the complaining party must make a timely and specific objection pointing out the matter complained of and the ground of the objection. If the objection does not fully comply with the requisites of Rule 274, the party waives the complaint. *See Kirkpatrick v. Memorial Hospital,* 862 S.W.2d 762, 769 (Tex.App.—Dallas 1993, writ denied). Even though an instruction may be erroneous, a party waives the error if he does not properly object. *See Castleberry v. Branscum,* 721 S.W.2d 270, 276 (Tex.1986).

■ The City raised several objections at the charge conference. For instance, the City objected that the charge did not include one of its requested instructions. The City also objected to an instruction that was included in the charge. However, the City did not object to the charge on the basis that the Kolbs were not entitled to compensable damages. We find the City has therefore waived any error relating to the submission of the compensable damages question.

■ Further, even if the City had properly preserved error, the record demonstrates there was sufficient evidence to support the jury's compensable damages finding. As discussed above, the damage sustained by the Kolbs was not common to the community. Rather the damages were specific to Kolb's property. Thus, the Kolbs were entitled to compensation for the taking or damaging of the property. *See Westgate,* 843 S.W.2d at 453. Two witnesses—David Lewis and Albert Allen—testified the value of the Kolbs' property substantially decreased after the denial of the application for the plat. Although the City's expert, Jack Mann, testified the property value remained the same before and after the denial of the application, the jury was entitled to believe Lewis and Allen and determine the Kolbs were entitled to compensable damages.

■ In its post-submission brief, the City argues that, in order for the Kolbs to recover for damages, they must show the property has been rendered useless and has no value. In support of this argument, the City relies on the following statement in *Mayhew*

Under substantive law, a regulatory taking occurs when governmental regulations deprive the owner of *all* economically viable use of the property or totally destroy the property's value.

*Mayhew,* 964 S.W.2d at 936 (citations omitted). Based on this statement, the City argues that, because Kolbs' experts testified the property still had some value after the denial of the application, there could have been no compensable taking.

Under both the United States and Texas Constitutions, however, a property owner must be compensated for *any* taking. *See* U.S. Const. Amend. 5 ("... private property [shall not] be taken for public use, without just compensation."); Tex. Const. article I, section 17 (no "person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made."). Further, the Supreme Court recognized in *Mayhew* that "[a] compensable regulatory taking can also occur when governmental agencies impose restrictions that either (1) deny landowners of all economically viable use of their property, or (2) unreasonably interfere with landowners' rights to use and enjoy their property." *Mayhew,* 964 S.W.2d at 935. The Kolbs presented evidence to show that the value of their land was diminished by the City's interference with their right to use, enjoy, and develop the property. Accordingly, the City's third point of error is overruled.

■ On rehearing, the City argues that if the trial court's judgment is to be enforced, the City should "be awarded the 'right of way,' 'an easement,' or some other legal interest in the land." Otherwise, the City contends the land owners will be permitted a double recovery. We disagree.

The jury's award represents compensation for damage to the Kolbs' property, *i.e.*, the diminishment of the land's value caused by the City's restrictions on its use and development. The City denied Kolbs' developmental

plat, in part, to decrease the costs of any future acquisition of a right-of-way.[8] The City has achieved its objective. So long as the City continues to insist upon the dedication of a right-of-way for the Grand Parkway, and the Kolbs are unwilling to grant it, the land will remain undeveloped. Thus, the cost of any future acquisition of the corridor has been minimized, and the judgment represents, in an abstract sense, the cost of suspending development.

The City's motion for rehearing is denied and the judgment of the trial court is affirmed.

**8.** John Ray Collins, Jr., a civil engineer and consultant for the Grand Parkway Association, testified as follows:

Q. And what criteria do you utilize in making the determination to make a recommendation that a particular development that's under review does or does not conflict with the Grand Parkway?
A. If it proposes the establishment—let me think about that a second. There are basically two kinds of plats that come through here for review from the City of Houston Planning Department. One is major thoroughfare plats. The second is—are subdivision plats....

So what I was going to say was the first kind, the subdivision plats that would put housing structures in the way of the Parkway are the ones that I strongly recommend against because if those things were there, then the Highway Department in its acquisition through eminent domain would have to buy out houses and people would be disrupted and have to move.
Q. And that would cost them more money?
A. It would cost them more money, certainly would.

Q. And may result in a substantial increase in their costs of acquiring property in order to be able to construct the public project?
A. Absolutely correct.
Q. And so from your perspective as someone who is trying to render advice and utilize your expertise in the planning and development of roadways for the Grand Parkway Association, you don't want to see that kind of thing happen?
A. That's correct.
Q. And so whenever you view that that could be—that could occur, you make it known to the City of Houston or whatever governmental authority has responsibility for approving developmental plats, you make it known that the Grand Parkway Association has objections or takes exception to that approval of that development?
A. That's exactly right.
Q. And the reason for that is; one, you don't want it to conflict with the proposed corridor; and two, you don't want to increase the cost for the State of Texas in the acquisition of those properties?
A. That is correct. And there is a third too, and it's the disruption of the lives of the people involved whose structures are being taken.