# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-05-00356-CV

---

**Buffalo Equities, Ltd., Appellant**

**v.**

**The City of Austin, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. GN501665, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Buffalo Equities, Ltd. ("BEL") wanted to develop its property for residential and commercial purposes and applied to have its property appropriately re-zoned. Part of the proposed development consisted of improvements to an easement BEL owns that runs across its neighbor's property. The City of Austin agreed to re-zone BEL's property. However, a City employee, Gregory Guernsey, later wrote a letter to BEL informing BEL that its development plans for its easement did not comply with the relevant zoning restrictions on BEL's neighbor's property. Further, Guernsey stated that BEL, as an easement owner, could not file to have its neighbor's property re-zoned.

Rather than appealing Guernsey's determination or seeking approval from the City for its development plans, BEL, in light of Guernsey's letter, filed suit against the City seeking various declarations and arguing that the City's actions constituted an impermissible

regulatory taking of BEL's property. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1997 & Supp. 2007) (declaratory judgment act); *Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 672-73 (Tex. 2004) (explaining when regulatory taking may occur). The district court dismissed BEL's regulatory takings claim for lack of jurisdiction and declared that BEL's intended use for the easement did not comply with the zoning restrictions on the property and that an easement owner may not initiate re-zoning procedures. BEL appeals the judgment of the district court. We will dismiss one of BEL's claims for want of subject-matter jurisdiction and affirm the remaining portions of the district court's judgment.

**BACKGROUND**

BEL owns approximately 119 acres in Travis County. In 1997, it entered into an easement agreement with one of its neighbors, Speedy Stop.[1] Although there are other means of entering and exiting BEL's property, the easement affords BEL access to highway 290—a major highway in Austin—through a driveway[2] over Speedy Stop's property that is part of a signalized intersection with the highway.

BEL wanted to develop a large portion of its property into residential and commercial areas, and in 2000, BEL applied to have its property re-zoned as a "planned unit development"

---

[1] At the time the agreement was entered, Speedy Stop was not the owner of the property in question. However, by the time this lawsuit was filed, Speedy Stop had purchased the property. For ease of reading, we will refer to the owner of the property as Speedy Stop.

[2] Although BEL originally characterized the paved portion of the easement as a driveway, it contends on appeal that the strip is actually an "access street." *See* Austin, Tex., Code § 25-4-157(A)(1) (defining "access street" as "street that provides access to a sub-division by connecting to an external street"). However, because the distinction is not relevant to our ultimate conclusion, we will refer to the strip as a driveway.

("PUD"), which is the designation given to "large or complex single or multi-use development that is planned as a single contiguous project and that is under unified control." *See* Austin, Tex., Code § 25-2-144. The City approved the re-zoning request.

Through discussions BEL had with various City employees about developing the first phase of the PUD, BEL was informed that the City would probably not approve BEL's plans for the first phase of its proposed development. In response to these discussions, BEL asked the City's Development Services Manager, Gregory Guernsey, to issue a statement concerning BEL's plans. Shortly thereafter, Guernsey sent BEL a letter in which he stated that BEL's proposed driveway over the easement did not comply with the zoning restrictions on BEL's neighbor's property. In particular, Guernsey stated that Speedy Stop's property was zoned as a "rural residence district," which is the designation used "for a low density residential use on a lot that is a minimum of one acre,"[3] *see* Austin, Tex., Code § 25-2-54, but concluded that BEL's proposed development for the easement constituted a "commercial driveway." Further, Guernsey opined that BEL could not apply to have Speedy Stop's property re-zoned for commercial purposes because BEL did not own the property. After receiving the letter, BEL asked the City's Zoning and Platting Commission to issue a request to re-zone Speedy Stop's property for commercial purposes, but the Commission denied that request. *See id.* § 25-2-242 (providing that, among other groups, re-zoning of property may be initiated by City Council, Land Use Commission, and record owner of property).

---

[3] Although not relevant to the ultimate outcome of this case, we do note that Speedy Stop has engaged in commercial activities on its property for years. *See* Austin, Tex., Code § 25-2-222 (providing that, in general, property annexed by City will initially be designated as rural residence district regardless of property's actual use).

3

In 2004, BEL filed suit against the City. In its petition, BEL sought a declaration that the City's rules and regulations do not prohibit the use of the driveway as part of the PUD development. Alternatively, BEL sought a declaration that the owner of an easement may file an application to re-zone the property upon which its easement is located. Finally, BEL brought a regulatory takings claim against the City, asserting that by prohibiting BEL from building the driveway, the City has "unreasonably interfered with [BEL]'s right to use and enjoy" its property.[4]

In response, the City filed a plea to the jurisdiction, contending that the district court did not have jurisdiction over the case because BEL had failed to exhaust its administrative remedies prior to filing suit. In particular, the City argued that BEL failed to properly appeal Guernsey's determination that the proposed development on the easement was a commercial driveway and that the driveway did not comply with the relevant zoning restrictions. Both BEL and the City filed cross-motions for summary judgment.

After reviewing the various motions, the district court dismissed BEL's regulatory takings claim on the ground that the district court did not have jurisdiction to hear the claim. In addition, the district court ordered that BEL's intended use for the driveway and easement did not comply with the relevant zoning restrictions because the zoning for the property on which the easement rests did not match the PUD's zoning restrictions. In particular, the court declared that BEL's intended use for the easement qualified as an "accessory use" to the PUD and that the zoning for accessory uses must be consistent with the zoning for the "principal use." *See* Austin, Tex.,

---

[4] In its petition, BEL also made several claims against Speedy Stop. However, the claims against Speedy Stop were subsequently severed from the claims against the City. This appeal only concerns the claims against the City.

Code §§ 25-2-891 (providing, in relevant part, that accessory use is use that is incidental to and customarily associated with principal use), 25-2-892 (stating that, in general, regulations applicable to principal use apply to accessory use). Furthermore, the court declared that BEL, as an easement owner, may not initiate re-zoning procedures for the property on which its easement rests because BEL was not the "record owner" of the property. BEL appeals the judgment of the district court.

## SCOPE AND STANDARD OF REVIEW

The standards for obtaining a traditional summary judgment are well established: the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Sergeant Enters., Inc. v. Strayhorn*, 112 S.W.3d 241, 245 (Tex. App.—Austin 2003, no pet.) (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)); *see* Tex. R. Civ. P. 166a(c). If the movant establishes a right to summary judgment, the burden shifts to the nonmovant, who must present summary-judgment evidence to the trial court raising a genuine issue of material fact to preclude summary judgment. *Cannon v. Texas Indep. Bank*, 1 S.W.3d 218, 223 (Tex. App.—Texarkana 1999, pet. denied). If the evidence raises no more than a surmise or suspicion of a fact in issue, no genuine issue of fact exists to defeat summary judgment. *Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 837 (Tex. App.—Dallas 2005, no pet.) (citing *Wiggins v. Overstreet*, 962 S.W.2d 198, 200 (Tex. App.—Houston [14th Dist.] 1998, writ denied)). We review the trial court's decision to grant summary judgment de novo.

5

*Sergeant Enters., Inc.*, 112 S.W.3d at 245 (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994)).

When the parties file cross-motions for summary judgment and when the trial court grants one motion and denies the other, the non-prevailing party may appeal the denial of its motion as well as the decision to grant the prevailing party's motion. *Id.* In this situation, an appellate court should review the summary judgment evidence from both sides and determine all the questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). After reviewing the evidence, the appellate court "should render the judgment that the trial court should have rendered." *Id.*

## DISCUSSION

On appeal, BEL raises three issues. In particular, BEL argues that the district court erred in issuing its first declaration in favor of the City, in declaring that an easement owner may not seek to re-zone the property upon which its easement rests, and in dismissing BEL's regulatory takings claim. In response, the City argues (1) that this Court does not have subject-matter jurisdiction over BEL's first claim because BEL failed to exhaust its administrative remedies before filing this lawsuit, (2) that the district court's second declaration was correct, and (3) that the district court correctly concluded that it did not have jurisdiction over BEL's regulatory takings claim. For the reasons that follow, we conclude that we do not have jurisdiction over BEL's first claim but conclude that the district court's second declaration was proper. We also conclude that the district court's determination that it did not have jurisdiction over BEL's third claim was proper. For ease

of reading, we will first address the jurisdictional arguments as they relate to the first and third claim. Finally, we will address the merits of BEL's second claim.

**First Declaration**

Although it did not file a notice of appeal, the City asserts on appeal that the district court did not have jurisdiction over BEL's first declaration and should have granted its plea to the jurisdiction on that issue. *See University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004) (explaining that subject-matter jurisdiction cannot be waived and can be raised for first time on appeal by parties or court and that courts have obligation to ascertain whether jurisdiction exists regardless of whether parties question its existence). A determination of whether a court has jurisdiction over a claim presents a question of law. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A plea to the jurisdiction "is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction." *Sykes*, 136 S.W.3d at 638. A plaintiff has the burden of alleging facts that demonstrate that a court has jurisdiction over the claims. *See Miranda*, 133 S.W.3d at 226. To prevail, a defendant must establish that there is an "incurable jurisdictional defect on the face of the pleadings." *City of Austin v. Rangel*, 184 S.W.3d 377, 384 (Tex. App.—Austin 2006, no pet.). We construe pleadings in favor of the pleader, but "[i]f the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Miranda*, 133 S.W.3d at 226.

The City contends that Guernsey's letter constituted a "use classification" determination that BEL should have appealed if it was unhappy with the determination. The City's

code authorizes the director of the Neighborhood Planning and Zoning Department to make use-classification determinations "for an existing or proposed use or activity."  *See* Austin, Tex., Code § 25-2-2.  According to the City, the director has delegated this authority to Guernsey.[5]  In response to a request by BEL, Guernsey informed BEL that its proposed use of the easement constituted a commercial driveway that did not comply with the zoning restrictions on Speedy Stop's property.  The Austin code provides that a party dissatisfied with an "appropriate use classification" determination may appeal the determination to the Board of Adjustment.  Austin, Tex., Code § 25-2-2; *see also id.* § 25-1-182 (specifying 20-day deadline for appealing).  Similarly, the local government code provides that the Board of Adjustment may "hear and decide an appeal that alleges error in a[] . . . determination made by an *administrative official* in the enforcement of" a local zoning ordinance.  Tex. Local Gov't Code Ann. § 211.009(a) (West 2008) (emphasis added); *see id.* § 211.010 (detailing who may file appeal with Board of Adjustment concerning decision made by "administrative official").  Further, the local government code also specifies that after obtaining review by the Board of Adjustment, an aggrieved party may seek judicial review of the Board's determination.  *Id.* § 211.011.

Courts have routinely held that the administrative remedies available under the portions of the local government relevant to this appeal must be exhausted before a party may seek judicial review of a determination made by an administrative official.  *See, e.g.*, *City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 250 (Tex. App.—San Antonio 2006, pet. denied);

---

[5] BEL does not dispute that the director delegated this authority to Guernsey or argue that this type of delegation is improper.

*Winn v. City of Irving*, 770 S.W.2d 10, 11 (Tex. App.—Dallas 1989, no writ); *see also*

*Grimes v. Stringer*, 957 S.W.2d 865, 869 (Tex. App.—Tyler 1997, pet. denied) (construing phrase

"may appeal" in statute to mean that aggrieved party has discretion to appeal determination, but if

party elects to, it must be appealed to administrative body specified in statute rather than to court).

The requirement of administrative exhaustion compels a party to "pursue all available remedies

within the administrative process before seeking judicial relief." *Larry Koch, Inc. v. Texas Natural*

*Res. Conservation Comm'n*, 52 S.W.3d 833, 839 (Tex. App.—Austin 2001, pet. denied). The failure

to comply with this requirement before seeking judicial review deprives a court of jurisdiction to

decide the case. *Id.*

BEL did not appeal Guernsey's determination to the Board of Adjustment.

Consequently, the City's position has not officially been determined through the administrative

process, and there is no justiciable controversy present. *Winn*, 770 S.W.2d at 11-12; *see El Dorado*

*Amusement Co.*, 195 S.W.3d at 250.

BEL claims that it was unnecessary for it to exhaust its administrative remedies prior

to filing suit because the relief it sought fell within several exceptions to the exhaustion requirement.

On appeal, BEL has characterized the declaration it originally sought as a declaration that "the City

has no discretion to refuse to accept, process and approve BEL's application based on its new and

invalid condition it has imposed on development of the BEL tract and the City has exceeded its

authority in so doing." In other words, BEL claims that it is seeking a declaration stating that as a

result of the City approving its PUD designation, the City is effectively precluded from improperly

imposing a condition on the proposed development of BEL's property at a later stage in the

development approval process, e.g., site- or building-permit approval. BEL asserts that resolution of this issue involves, among other things, determinations of pure questions of law and a determination of whether a city employee has exceeded its authority: determinations that BEL claims do not require administrative exhaustion. *See Henry v. Kaufman County Dev. Dist. No. 1*, 150 S.W.3d 498, 503 (Tex. App.—Austin 2004, pet. granted and case remanded by agr.).

In particular, BEL contends that the resolution of its first issue will involve consideration of whether the City may condition the approval of a site-plan application filed by BEL on "fulfillment of a condition that is not required under either the PUD Ordinance or the Code." Furthermore, BEL alleges that resolution of the issue will involve a determination of whether the City's employees may create new use classifications without approval by the City Council and whether the creation of a new classification is "beyond the scope of" the employee's authority. Specifically, BEL argues that the City's code does not list a "commercial driveway" as a type of "use classification," *see* Austin, Tex., Code §§ 25-2-1 (describing "major use categories" as "residential, commercial, industrial, civic, and agricultural"), 25-2-4 (listing 69 specific commercial use classifications), and that the creation of this new type of classification was beyond Guernsey's or the director of the Neighborhood Planning and Zoning Department's authority.[6]

---

[6] Although we need not reach the merits of whether Guernsey's characterization of the intended use for the easement as a commercial driveway was an improper use classification, we do note that although the code does not specifically include "commercial driveways" in its list of "use classifications," nothing in the code indicates that the list is exhaustive. In fact, section 25-2-2 seems to acknowledge that a proposed use might not fit within one of the enumerated categories. In particular, the section instructs the reviewer to "consider the characteristics of the proposed use and the similarities, *if any*, of the use to other classified uses." Austin, Tex., Code § 25-2-2(B) (emphasis added). Moreover, the code does include driveways within the description of a specific commercial use classification, which is some indication that the City intended for reviewers to consider driveways as part of a "use classification" determination. *See id.*

As a preliminary matter, we note that BEL's characterization of this issue on appeal differs from what was stated in BEL's original petition, which sought a declaration "that the City of Austin rules and regulations (including the Land Development Code) do not prohibit use of the driveway area identified in the 1997 Driveway Easement Agreement across [rural residentially] zoned property to access the . . . [PUD], regardless of the use in the . . . PUD." This declaration, by its terms, is factually dependent and does not present pure questions of law.

Moreover, the fact that a party suggests that the resolution of the issue as framed on appeal might involve some determinations of law cannot be the end of our jurisdictional inquiry; rather, we must also ascertain whether the determination of the "pure questions of law" specified are in fact questions of law and, if so, whether addressing those questions, on their own, will resolve the actual controversy at issue. A declaration that the City may not impose a condition for approval that is contrary to the City's code will not resolve the controversy over whether Guernsey's determination and a potential decision by the City to forestall development are improper and contrary to the City's code. Similarly, a declaration that the City's employees may not create new use classifications without approval by the City Council will not, on its own, resolve the conflict of whether BEL's proposed improvements to the easement will violate relevant zoning restrictions or whether Guernsey's determination that BEL's intended use for the easement was commercial in nature was inaccurate or improper.

The first issue on appeal will not be resolved by consideration of pure questions of law and will involve consideration of significant factual matters, rendering it an issue primed for administrative exhaustion. Moreover, because BEL has bypassed the administrative process, we have no way of knowing what the City's ultimate response to BEL's arguments would have been.

11

Although in part of its argument BEL concedes that Guernsey's letter constituted a use determination, albeit an improper one, BEL also argues that the letter could not constitute a use-classification determination. As described previously, the City's code does not specifically list "commercial driveway" as a type of use classification, *see* Austin, Tex., Code §§ 25-2-1, 25-2-4, and for this reason, BEL contends that the letter did not qualify as a use determination.

Even assuming that the letter was not a use determination and that the letter was in fact just an opinion by one of the City's employees, we would still conclude that we do not have jurisdiction over the case because no justiciable controversy is present. Prior to filing suit, BEL did not file an actual site-plan application, and the City has, therefore, taken no position on whether it would approve an application. *See* Austin, Tex., Code §§ 25-5-1 (providing, with certain exceptions, that "a site plan must be approved and released under this chapter before: (1) a person may change the use of property; (2) a person may develop property; or (3) the building official may issue a building permit)," 25-5-149 (stating that site-plan applicant may appeal denial of its application to City Council). Consequently, if Guernsey's letter was not a use determination, BEL has asked the district court and this Court to issue an advisory opinion regarding its future rights if the City decides to deny BEL's application, and there is, therefore, no actual controversy to resolve. *See Thomas v. City of San Marcos*, 477 S.W.2d 322, 324 (Tex. Civ. App.—Austin 1972, no writ) (concluding that when City official sent property owner letter requesting owner cease development of his property, court did not have jurisdiction over claim because owner did not file for permits to build on property and, therefore, had not exhausted administrative remedies).

Accordingly, whether the letter is viewed as a use determination or not, this Court does not have jurisdiction over BEL's first issue. Consequently, we conclude that the district court

12

should have granted the City's plea to the jurisdiction with respect to this issue. Moreover, because BEL admits that it did not appeal Guernsey's determination or file a site-plan application, we conclude that the record affirmatively negates the existence of jurisdiction and that dismissal is appropriate. *See* Tex. R. App. P. 43.2 (explaining that one of permissible types of appellate judgments is to dismiss); *South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 308 (Tex. 2007) (dismissing case after determining court did not have subject-matter jurisdiction over case).

**Regulatory Takings Claim**

In addition to the declarations sought against the City, BEL also contends that the City's actions constituted a regulatory taking of BEL's property because by "denying [BEL] the ability to build the driveway, [the] City . . . has denied [BEL] all economically viable use of their property and [the] City . . . has unreasonably interfered with [BEL's] right to use and enjoy same." *See Rowlett/2000 v. City of Rowlett*, 231 S.W.3d 587, 590-91 (Tex. App.—Dallas 2007, no pet.) (explaining that city's passage of ordinance may injure property's value or usefulness, which, in some circumstances, might constitute taking).

To bring a regulatory takings claim, the claim must be ripe for resolution. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex. 1998); *see also Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998) (explaining that ripeness is necessary component of subject-matter jurisdiction and concerns when a claim may be made). For a regulatory takings claim to be ripe, "there must be a final decision regarding the application of the regulations to the property at issue." *Mayhew*, 964 S.W.2d at 929. A final decision usually occurs after a development plan has been formally rejected by a city and after the city has rejected the property owner's request for a

variance. *Id.* at 929-30. In this context, the term "variance" is applied flexibly and encompasses permits and other applications that provide relief that is similar to a variance. *City of Houston v. Kolb*, 982 S.W.2d 949, 952 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). The purpose behind requiring the denial of a variance or similar requested relief is to give the city an opportunity to grant some form of relief or make a policy decision that will abrogate the alleged taking. *Id.* The requirement of a final decision stems, in part, from the need to have sufficient evidence to be able to compare uses prohibited by the regulation with permissible uses that may be made of the affected property in order to properly ascertain whether a taking has in fact occurred. *See Mayhew*, 964 S.W.2d at 929.

Although BEL received a letter from a City employee stating that BEL's intended use for the easement did not comply with the relevant zoning restrictions, BEL has not referred us to any regulation or case that equates this type of letter with a rejection of a development plan, that establishes that the receipt of this type of letter forecloses continued development approval through site-plan applications and building-permit applications, or that characterizes this type of letter as a final decision on the matter.[7] On the contrary, the various reports and the ordinance granting the PUD designation all demonstrate that the City has not foreclosed the possibility that BEL will be able to develop the easement in question: quite the contrary, they all contemplate development of the easement. Moreover, even assuming that the letter is a rejection of BEL's development plan, nothing in the record demonstrates that BEL sought a variance or similar relief from Guernsey's determination, and consequently, the City has not issued a denial of the relief requested.

_____

[7] It is worth noting again that BEL has not actually filed a site-plan application to develop its property and that, consequently, the City has not formally refused to accept an application.

14

BEL insists that, in this case, it was unnecessary for BEL to file for a variance in order for this Court to have jurisdiction over the claim. Specifically, BEL contends that it is unnecessary for a party to file what amounts to "futile variance requests or re-applications" before filing a takings claim. *See id.* at 929-30. However, nothing in the letter or the remainder of the record indicates that BEL had been informed that it would have been futile to petition for some type of relief from Guernsey's determination or that Guernsey and other officials would have been unreceptive to BEL's arguments. Furthermore, BEL presented no evidence or testimony from City officials that the City would not have considered allowing for a variance or some other form of relief. *See Kolb*, 982 S.W.2d at 953-54 (detailing testimony of various officials that it would have been futile for property owner to file for variance because city would not have approved it under any circumstances).

Moreover, the case BEL relies on as demonstrating that it would be futile for BEL to file applications is distinguishable from this case. In *Mayhew*, the Mayhews requested approval to build between 3,650 and 5,025 properties, but the Mayhews modified their application by asking to develop fewer properties after receiving negative feedback from the town's zoning committee. 964 S.W.2d at 931. Even after the Mayhews made the modification, the town of Sunnyvale denied a planned development application, but the Mayhews did not file for a variance. 964 S.W.2d at 931. In determining that the claim was ripe, the court noted that the Mayhews' proposed modification to their application might have, on its own, satisfied the variance requirement. But even if the modification was not a variance, the court concluded that it still had jurisdiction because the Mayhews alleged that they could not make an additional compromise to the number of properties that were to be developed because any further reduction would render the project economically

15

unviable. *Id.* at 931-32. In essence, the court concluded that after receiving a rejection by a city, property owners should not be required to submit additional permits for development that would render the development unprofitable before being able to seek judicial relief. *Id.* at 932. Further, the court indicated that if the Mayhews had not made the economic allegation, the claim might otherwise not be ripe. *Id.*

Neither of those circumstances is present here. BEL proposed no modification after receiving the letter from Guernsey, and BEL has not demonstrated that any modification to its proposed development would render the development economically undesirable.

For all the reasons previously given, we conclude that the district court correctly determined that it did not have jurisdiction over BEL's regulatory takings claim, affirm that portion of the district court's judgment, and overrule BEL's third issue on appeal.

**Second Declaration**

In addition to the first declaration previously discussed,[8] BEL also sought a declaration that "an owner of an easement has the right to file an application to re-zone, if necessary,

---

[8] The City limited its jurisdictional arguments to BEL's first and third issues and does not contend that this Court lacks jurisdiction over BEL's second issue on appeal. However, we note that unlike the first issue, the second issue concerns a pure question of law, rendering the determination appropriate for decision despite the fact that BEL had not exhausted all of its administrative remedies. *See Henry v. Kaufman County Dev. Dist. No. 1*, 150 S.W.3d 498, 503 (Tex. App.—Austin 2004, pet. granted and case remanded by agr.). Furthermore, prior to filing suit, BEL was informed by a City employee that it would be unable to apply to re-zone Speedy Stop's property, and BEL's petition to the City's Zoning and Platting Commission to issue a request to re-zone Speedy Stop's property was denied. Consequently, there is a "justiciable controversy as to the rights and status of" the parties, and the requested declaration will "actually resolve the controversy." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004); *see Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 154 (Tex. App.—Austin 1998, no pet.) (explaining that justiciable controversy "is one in which a real and substantial controversy exists involving a genuine conflict of tangible interests and not merely a theoretical dispute").

16

the area subject to such easement." The Austin code lists the individuals and governmental bodies that may file to re-zone property and provides, in relevant part, that zoning or re-zoning may be initiated by "(1) [the City] Council; (2) [the] Land Use Commission; (3) [the] record owner; (4) [the] Historic Landmark Commission, . . . ; or (5) for a proposed historic area (HD) combining district, petition of the owners of at least 60 percent of the land in the proposed district." Austin, Tex., Code § 25-2-242. After construing this portion of the code, the district court issued a declaration stating that because BEL "is not a 'record owner'" of the property on which its easement sits, it "may not . . . initiate zoning or rezoning of [the] property subject to the easement."

On appeal, BEL argues that the district court erred in issuing the declaration and in refusing to make the declaration that BEL originally requested. In making this assertion, BEL contends that as a result of entering into an easement agreement with Speedy Stop, it is a "record owner" of a property interest in Speedy Stop's property. BEL further notes that because it is an easement holder, it has a right to use the easement that is superior to Speedy Stop's, *see McDaniel v. Calvert*, 875 S.W.2d 482, 485 (Tex. App.—Fort Worth 1994, no writ), and that it has whatever implied rights to the property are necessary "to fairly enjoy the rights expressly granted," *see Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 701 (Tex. 2002).

In light of the preceding, BEL insists that the district court's declaration that BEL may not seek to re-zone the property is erroneous and is an inaccurate construction of the City's code that leads to the absurd result that an owner of a tract that has had its property zoned as a PUD will be prohibited from developing its property if the easement that will serve as an entrance to the development is not appropriately zoned but will also be prohibited from filing to have the property re-zoned. Moreover, BEL argues that the City's refusal to accept its zoning modification request is arbitrary, unreasonable, and in excess of its authority.

17

Resolution of this issue involves construing various City ordinances, which is a question of law reviewed de novo. *See Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002); *USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied); *see also Coppell v. General Homes Corp.*, 763 S.W.2d 448, 453 (Tex. App.—Dallas 1988, writ denied) (explaining that courts construe city ordinances in same manner that they construe statutes). When construing ordinances, we must ascertain the intent of the governing body enacting the regulations at issue. *Coppell*, 763 S.W.2d at 453; *see Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). In determining intent, courts should look to the plain meaning of the words used in the ordinances. *Coppell*, 763 S.W.2d at 43; *see Fireman's Fund County Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768-69 (Tex. 2000). We presume that every word was deliberately chosen and that excluded words were left out purposely. *USA Waste Servs.*, 150 S.W.3d at 494. When determining intent, the entire regulation, not isolated portions, must be considered. *Coppell*, 763 S.W.2d at 453; *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998). In determining intent, courts also give serious consideration to an agency's interpretation of a statute that the agency is charged with enforcing provided that the interpretation is reasonable and consistent with the relevant governing regulations. *Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 807 (Tex. 2002); *see City of Austin v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 441-42 (Tex. 2002).

For the reasons that follow, we disagree with BEL. First, the district court's declaration is consistent with the relevant governing regulations. The City's code specifies that a "record owner" may initiate re-zoning procedures. Austin, Tex., Code § 25-2-242. The code defines a record owner as "the owner of real property as shown by the deed records of the county in which the property is located." *Id.* § 25-1-21(86); *see also id.* § 25-1-134(B) (explaining that when notice

18

needs to be given to "record owner" of real property, notice may be made "by mailing notice to the owner at the street address of the property or, if the property does not have a street address, to the return address shown on the deed").

Second, the declaration is also consistent with common law principles associated with easements. "[A]n easement is a nonpossessory interest that authorizes its holder to use property for only particular purposes" and constitutes a limited relinquishment of the right of a property owner to exclude others from his property. *Krohn*, 90 S.W.3d at 700; *see* Restatement (Third) of Property (Servitudes) § 1.2 cmt. d (distinguishing between easements, which allow owner to only use land for specific purposes, and possessory land interest, which permits owner to use property for any purpose). In other words, an easement is a privilege to use land that is completely distinct from ownership of the land, *Hubert v. Davis*, 170 S.W.3d 706, 710 (Tex. App.—Tyler 2005, no pet.), and an easement does not convey title to property, *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 658 (Tex. 2007); *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 873 (Tex. App.—Austin 1988, writ denied).

Third, the declaration is also consistent with the construction of the regulations made by the agency responsible for administering the City's zoning regulations. According to Guernsey's affidavit, the Neighborhood Planning and Zoning Department, which is responsible for administering the City's zoning regulations, equates the phrase "record owner" with "land owner" or "fee owner." Although BEL may own an easement right, it is not the owner of the property on which its easement rests.

Finally, the declaration is consistent with the terms of the easement in question. An easement is an agreement between a property owner and another party, and for this reason, courts apply basic contract principles of construction when determining the terms of the agreement. *Krohn*,

19

90 S.W.3d at 700. The parties' express intentions determine the scope of the easement. *Id.* The easement agreement at issue here specifies that it "contains the entire agreement between the parties relating to the easements, rights and privileges herein granted and undertaken." The agreement does not mention zoning in any manner and does not bequeath the right to re-zone the property to BEL.[9] *Cf. Cross v. Dallas County Flood Control Dist. No. 1*, 773 S.W.2d 49, 50 (Tex. App.—Dallas 1989, no writ) (detailing easement requirements, which included requirement that easement owner support all zoning requests and building-permit requests made by property owner).

For these reasons, we are persuaded that the district court properly declared that BEL, as an easement owner, may not seek to re-zone the property on which its easement rests. Accordingly, we overrule BEL's second issue on appeal.

## CONCLUSION

In light of the preceding, we dismiss BEL's first issue on appeal and affirm the remainder of the district court's judgment.

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed in part; Dismissed in part

Filed:  May 9, 2008

---

[9] In this opinion, we make no comment on whether BEL may sue Speedy Stop to compel Speedy Stop to initiate a zoning request. We only note that the easement did not expressly give BEL the ability to initiate a zoning change.